April FORESTER, Appellant,

v.

Joel FORESTER and Tamara
Forester, Appellees.

No. 96–CA–002677–MR.

Court of Appeals of Kentucky.

April 24, 1998.

Sharon K. Morris, James M. Morris, Lexington, for Appellant.

Susan C. Lawson, Harlan, for Appellees.

Before EMBERTON, HUDDLESTON and MILLER, JJ.

EMBERTON, Judge.

The appellant, April Forester, appeals from a Harlan Circuit Court order awarding permanent custody of her biological child, Courtney Forester, to the appellees, Joel and Tamara Forester, the child's uncle and aunt. After reviewing the arguments of the parties, the record, and for the reasons stated, we affirm in part and reverse and remand in part.

Grant Forester, the child's biological father, and April were married in June 1990. On August 22, 1994, April gave birth to Courtney Lynne Forester. The events leading to the placement with appellees began on October 21, 1994. On that date, in response to a call from Grant, the appellees went to the residence of Jackie Forester, Courtney's paternal grandmother, where April and Grant were then residing, and found Grant in a state of intoxication preparing baby formula and April lying on the couch unable to function. The parents refused appellees' request to remove the child. At 5:00 a.m. the next morning, again after receiving a call from Grant, appellees returned to the home of the paternal grandmother and found Grant and April engaged in a physical altercation.

Grant had struck April blackening her eye, and the home was in disarray and confusion. Courtney was found sleeping in a car seat. Grant was subsequently arrested on a number of counts, including domestic violence, disorderly conduct, and resisting arrest. Appellees took Courtney to their home for the night.

On the afternoon of October 22, 1994, April requested return of the child. Appellees refused and filed a neglect petition in Harlan District Court. Based upon the representations in the petition, an emergency order was issued granting temporary custody to the Cabinet for Human Resources (CHR) under Ky.Rev.Stat. (KRS) 620.060. The Cabinet left Courtney with appellees pending a temporary removal hearing. The hearing was held on October 26, 1994, in Harlan District Court resulting in a finding that the best interests of the child required CHR to retain custody for at least 45 days.

By order dated February 9, 1995, the trial court, in accordance with the parties' agreement, awarded the natural parents and appellees joint custody, with appellees as the primary custodians. The stated intention of the appellees at this time was that Courtney eventually be returned to her natural parents, and in April 1995, she was returned to April and Grant for approximately seven weeks. Following her return, a series of confrontational episodes occurred between April and Grant and between Grant and appellees. Grant allegedly denied appellees visitation with Courtney and made various threats, including death threats, against them. On May 20, 1995, Grant was arrested for public intoxication and terroristic threatening. A series of motions was then filed by each party including appellees' request for sole custody. A hearing was held on May 30, 1995, at the conclusion of which appellees were granted sole temporary custody of Courtney.

Over the course of the next year Grant continued to engage in abusive conduct toward April and make threats to appellees. While Grant did undergo periods of counseling and attempts to end his dependence on drugs and alcohol, these periods were short lived. Grant was arrested on several occasions for drug, alcohol, and disorderly conduct offenses, and spent much of the time incarcerated. Though perhaps inconsequential in result, during this time April made an effort to improve her emotional and mental condition by undergoing counseling and parental training. In October 1995, Grant commenced divorce proceedings. Evidence was produced, however, that April continued to see Grant even while he was in prison as well as in the hospital and at a local motel. Under prevailing authority, a natural parent is entitled to custody over a non-parent unless it is demonstrated that the natural parent (1) is unsuitable to have custody, (2) is harmful to the child, (3) has contracted to give his child away, or (4) is clearly estopped to claim custody. *James v. James,* Ky., 457 S.W.2d 261, 263 (1970). The United States Supreme Court has recognized fundamental, basic and constitutionally protected rights of parents to raise their own children; and, that an attack by third persons seeking to abrogate that right must show unfitness by "clear and convincing evidence." *See Santosky v. Kramer,* 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982).

In *Boatwright v. Walker,* Ky., 715 S.W.2d 237 (1986), the court held that a natural parent's superior right to the child's care and custody can be "abrogated in an action involving a non-parent seeking custody [only] by a showing of unfitness sufficient to support an involuntary termination of parental rights." *Id.* at 244. Subsequently the court, in *Davis v. Collinsworth,* Ky., 771 S.W.2d 329 (1989), recognizing the failure to define the term "unfit," held that the evidence necessary to show unfitness of a parent when a third party seeks custody includes: (1) evidence of inflicting or allowing to be inflicted physical injury, emotional harm, or sexual abuse; (2) moral delinquency; (3) abandonment; (4) emotional or mental illness; and (5) failure, for reasons other than poverty alone, to provide essential care for the children. *Id.* at 330. It is significant to note that the evidence necessary under *Davis, supra,* does not enumerate all the criteria required under KRS 625.090, which sets out the grounds for involuntary termination:

(a) That the parent has abandoned the child for a period of not less than ninety (90) days;

(b) That the parent has inflicted or allowed to be inflicted upon the child, by other than accidental means, serious physical injury;

(c) That the parent has continuously or repeatedly inflicted or allowed to be inflicted upon the child, by other than accidental means, physical injury or emotional harm;

(d) That the parent, for a period of not less than six (6) months, has continuously or repeatedly failed or refused to provide or has been substantially incapable of providing essential parental care and protection for the child *and that there is no reasonable expectation of improvement in parental care* and protection, considering the age of the child; (emphasis added)

(e) That the parent has caused or allowed the child to be sexually abused or exploited; or

(f) That the parent, for reasons other than poverty alone, has continuously or repeatedly failed to provide or is incapable of providing essential food, clothing, shelter, medical care, or education reasonably necessary and available for the child's well-being *and that there is no reasonable expectation of significant improvement in the parent's conduct in the immediately foreseeable future,* considering the age of the child. (Emphasis added).

■ We think it is critical to the case before us to recognize that *Davis, supra,* omitted the requirement that where the lack of ability to provide parental care and protection is the basis for involuntary termination, the trial court must find that there is no reasonable expectation of improvement in parental care and protection as required by KRS 625.090(1)(d). For reasons stated below, we find it necessary to expand on the *Davis* court's attempt to define "unfitness."

■ The granting of permanent custody to a third party does not, theoretically, as does the termination of parental rights, completely sever the parent and child relationship. A non-custodial parent may, as in April's case, be afforded visitation rights to the child; the parent, obviously, does lose her superior right to custody of the child however. KRS 403.340(1) provides for an alteration of the custody arrangement only if the child's environment seriously endangers his health or well-being, and after two years, custody may be modified only in limited circumstances. Furthermore, it is not inconceivable that a non-parental custodian, already having the court's finding of unfitness, would seek a termination of the parent's rights. In order to protect the superior right of the parent where a third party seeks custody, the parent must prevail unless it can be demonstrated by clear and convincing evidence that the parent is unfit as required by the factors set forth in KRS 625.090.

The trial court found that April is a loving mother who has not intentionally inflicted harm upon her child. She is, however, presently mentally and emotionally unfit to care for Courtney. Raised as an abused child herself, she continued to be subjected to abuse while married to Grant and had, at the time of the hearing, been unable to leave this destructive relationship. There was no finding, however, that April will not, in the foreseeable future, be able to provide parental care and protection for Courtney. Courtney is a young child and April a young mother. It has not escaped this court's attention that Grant seems to be the primary cause of April's difficulties, and that absent his influence, she may become a suitable custodian. The trial court also expressed uncertainty as to April's future as a parent when it invited her to take action to improve her situation so that she might again establish a parental relationship with Courtney. We hold that the trial court must find, by clear and convincing evidence, that there is no reasonable expectation that she will improve in her ability to provide parental care and protection, before it can permanently award custody to Tamara and Joel Forester.

Courtney is presently in the custody of Tamara and Joel and there is clear and convincing evidence that April is not presently capable of caring for the child. Our opinion does not alter the present temporary custody situation. The trial court, however, must make a finding as to April's future

ability to care for Courtney. Undoubtedly, this finding will in large part be based on the prospects of April leaving her relationship with Grant and on her attempts at psychological rehabilitation. If it should find that there is a reasonable expectation that April will be able to provide for Courtney's care, temporary custody should remain with Tamara and Joel until those expectations are met. Should the court find that there is no such expectation, Tamara and Joel should be awarded permanent custody.

■ April argues that the trial court improperly entered a permanent custody award without following the recommendation of the Cabinet for Human Resources and without participation by the Cabinet. The record reveals that the Cabinet was named as a party to the emergency custody action, but did not file a pleading. Joint temporary custody was awarded to April, Grant, Tamara and Joel with Joel and Tamara as primary custodians. The Cabinet failed to make a recommendation as to permanent custody and did not participate in the proceedings.

■ April waived whatever right she had with respect to this issue by not raising it with the trial court. "It goes without saying that errors to be considered for appellate review must be precisely preserved and identified in the lower court." *Skaggs v. Assad, By and Through Assad,* Ky., 712 S.W.2d 947, 950 (1986). Appellant has failed to comply with this mandate. The events of this proceeding began on October 22, 1994. In the succeeding months appellant failed to raise the issue of which she now complains. Moreover, appellant fails to cite with reference to the record showing whether the issue was properly preserved for review and, if so, in what manner. In view of this, we find no error.

This case is reversed and remanded to the trial court for a finding as to whether there is a reasonable expectation that April will in the future be able to provide parental care for Courtney. In all other respects, including the visitation schedules, the order of the Harlan Circuit Court is affirmed.

All concur.