v.

**B.T. and K.F., Joint Custodians of N.C.[1], Appellees.**

No. 2005–CA–000045–ME.

Court of Appeals of Kentucky.

Dec. 29, 2005.

1. The parties will be referred to by their initials or family status to protect the interests of the minor child.

Delbert K. Pruitt, Paducah, KY, for appellant.

Vicki R. Holloway, Paducah, KY, for appellees.

Before BARBER, BUCKINGHAM, and JOHNSON, Judges.

## OPINION

JOHNSON, Judge.

B.C. has appealed from the November 3, 2004, order of the McCracken Family Court which granted custody of his minor child, N.C., to B.T., the paternal grandmother of the child, and K.F., the paternal aunt of the child. Having concluded that the family court's factual findings were not clearly erroneous, that it correctly applied the law, and that it did not abuse its discretion in making its custody award, we affirm.

B.C. and his wife, R.C., are the natural and biological parents of N.C., whose date of birth is June 17, 2002. On July 18, 2003, a juvenile dependency, neglect, and abuse petition was filed in the McCracken Family Court on behalf of N.C. by Alexia J. Pritchett, a social worker with the Cabinet for Families and Children. The petition stated that the mother had "verbally and physically assault[ed]" N.C.'s older sibling and the Cabinet feared that since the older sibling had been removed from the home that the mother's anger would turn to N.C. The petition further stated:

> The home is unsafe for a thirteen-month old child. The home is cluttered with piles of clothes and other items several feet high. [The mother] stores her medications on the couch. [The mother] stated the couch was her medicine cabinet and refused to move the medication stating [the child] does not climb on the couch. [The mother] makes baby rattles out of medication bottles and black-eyed peas. [The father] works six days a week driving a truck out of town.

An emergency custody order was entered the same date, temporarily placing N.C. in the custody of the Cabinet.[2] On July 22, 2003, a temporary removal hearing was held and the family court entered an order placing N.C. in the temporary custody of B.T., the paternal grandmother.

On September 18, 2003, the family court held an adjudication hearing. The family court found that N.C. was a neglected child and allowed temporary custody to remain with the paternal grandmother. At a disposition hearing held on October 16, 2003, the family court found that because the mother neglected the minor

---

2. The family court found all reasonable efforts were made to prevent the child's removal from the home.

child,[3] and even though reasonable efforts had been made to prevent the child's removal from the home, it was in the best interests of the minor child to grant his temporary custody to the paternal grandmother. Pursuant to an amended disposition order entered on October 27, 2003, C.C., the mother's sister, N.C.'s maternal aunt, was granted one overnight visitation per week with N.C., with the stipulation that if the mother was present for the visitation that her visitation must be supervised or the visitations at the maternal aunt's home would terminate.[4]

On December 18, 2003, B.T., the paternal grandmother, and K.F., the paternal aunt, filed a verified motion for permanent custody of N.C. During this time, the father filed a motion for a rule on September 27, 2004, stating that the paternal grandmother was denying him visitation with N.C. However, neither the father nor the mother filed a response to the paternal grandmother's and the paternal aunt's motion for custody. The father's motion for a rule was renoticed on March 3, 2005. There is no order of record as to the father's motion for a rule. N.C.'s guardian ad litem filed her report on November 10, 2004, recommending that the motion for permanent custody be granted. Following several delays, a hearing was held in the family court on November 8, 2004. The family court, in an order entered on December 3, 2004, found as follows:

1. The natural parents had inadequate housing for the minor child at the time of his removal from the home. The home continues to be inadequate as of the date of the hearing. In fact, [the mother] testified that the home is uninsurable due to structural problems. One room has no floor whatsoever, only open floor joists. This condition allows snakes, mice and insects to come into the home. One of the bathrooms is completely unusable.

2. The house was unsafe for a crawling infant. At the time of the removal, the house was littered with piles of clothing and other items. Medicines were kept within easy reach of the child. A loaded gun was left on a nightstand, within easy reach of the child. The baby's older brother (age 9) took and shot the gun in the house on one occasion. A whiskey bottle was "stored" on the floor by the father's chair, within easy reach of the child. Though these issues were addressed to the parents by Social Services prior to the removal, the conditions still existed at the time of removal. Neither [the father] nor [the mother] recognized the seriousness of these issues.

3. [The mother] is an unfit parent. She yelled, cursed and screamed at the children unnecessarily and inappropriately. She has also bit and choked her older child. Her older son was removed from her home due to her neglect and abuse. . . .

---

3. The Cabinet filed a predispositional investigation report prior to the disposition order being entered. While the Cabinet found the home clean and medicines were up away from children, it had concern because the mother had only visited with the minor child once or twice a week, while she had the opportunity to do so every day. The Cabinet report states: "The Cabinet recommends that [the mother] receive individual counseling to work on her own issues before the children are returned to her."

4. The family court noted in its custody order entered on December 3, 2004, that the maternal aunt did not file a response or appear at the hearing on the motion for permanent custody brought by the paternal grandmother and the paternal aunt.

4. [The father] failed to provide adequate shelter for his child prior to the removal. [The father] has made no significant effort over the fifteen month period [the child] has been gone to make the needed improvements to the house.

5. Neither parent has provided any financial support for the minor child since June, 2003.

6. The parents had supervised visitation throughout this proceeding. The parents have not fully exercised said visitation. They did not visit with him except a few hours during the week preceding the hearing, though the child was available. [The father] has had the opportunity to visit with his child, but chose not to for a period of two months (January and February 2004).

The trial court also found both parents to be unfit, awarded the paternal grandmother and the paternal aunt joint custody of N.C., and ordered that the father and the mother be required to pay child support.[5] From that order, the father filed this appeal.[6]

This proceeding was initially brought by the Cabinet based on a petition alleging that N.C. was an abused and neglected child as described in KRS[7] 620.070. McCracken County has a family court system in place, thus the actions of the family court in this case are viewed differently than a district court carrying out the same functions. The implementation of the Family Court System has made the analysis of these type of cases somewhat confusing. Before we begin our analysis of the issues at hand, we will outline the procedures, as set forth by statute.

First, we will address the jurisdiction of the family court. It is a misnomer to say that a family court serves the role of a district court and a circuit court. KRS 23A.100 specifically states that the family court is "a division of Circuit Court with general jurisdiction pursuant to Section 112(6) of the Constitution of Kentucky." As a division of the circuit court, the family court has jurisdiction of cases, including child custody and visitation.[8] Further, while still acting as a division of the circuit court, the family court has "additional jurisdiction" over "[d]ependency, neglect, and abuse proceedings under KRS Chapter 620,"[9] such cases which are usually under the jurisdiction of the district courts in Kentucky.[10] Thus, the family court when hearing cases normally within the district court's jurisdiction, is not sitting as a district court, but rather as a circuit court given special jurisdiction to hear cases normally under the district court's charge.

This distinction is critical as it justifies this Court's authority to hear the case before us. Appeals from district court orders are appealed to the circuit court, not to this Court.[11] However, regardless of the type of case before a family court, it is still acting as a circuit court and thus an appeal to this Court is proper. Therefore, it is irrelevant whether the current action is one that would have been handled by a

---

5. The record does not indicate whether child support was ever set.

6. The mother is not a party to this appeal, thus her rights to custody of N.C. will not be determined by this Court at this time.

7. Kentucky Revised Statutes.

8. KRS 23A.100(1)(b) and (1)(c).

9. KRS 23A.100(2)(c).

10. KRS 610.010(1)(e) and (4); *see also* KRS 620.070(1).

11. KRS 610.130.

district court or a circuit court, as long as it is within the jurisdiction given to the family court under KRS 23A.100, our review is proper.

Second, we will analyze the procedure used by either a district court or a family court under KRS Chapter 610 and KRS Chapter 620 to determine whether temporary removal of a child is necessary based on his status as a dependant, neglected, or abused child. KRS 600.020(1) defines an abused or neglected child as follows:

[A] child whose health or welfare is harmed or threatened with harm when his parent, guardian, or other person exercising custodial control or supervision of the child:

(a) Inflicts or allows to be inflicted upon the child physical or emotional injury as defined in this section by other than accidental means;

(b) Creates or allows to be created a risk of physical or emotional injury as defined in this section to the child by other than accidental means;

(c) Engages in a pattern of conduct that renders the parent incapable of caring for the immediate and ongoing needs of the child . . .;

(d) Continuously or repeatedly fails or refuses to provide essential parental care and protection for the child, considering the age of the child;

. . .

(h) Does not provide the child with adequate care, supervision, food, clothing, shelter, and education or medi-cal care necessary for the child's well-being. . . .

The formalities of filing a dependency, neglect, or abuse action are outlined in KRS 620.070. All juvenile proceedings "shall consist of two (2) distinct hearings, an adjudication and a disposition[.]" [12] In a dependency, neglect, or abuse case, "[t]he adjudication shall determine the truth or falsity of the allegations in the petition and shall be made on the basis of an admission or confession of the child to the court or by the taking of evidence." [13] "The burden of proof shall be upon the complainant, and a determination of dependency, neglect, and abuse shall be made by a preponderance of the evidence." [14] The adjudication, which determines whether a child has in fact been neglected or abused is considered a trial and the parties have a right to appeal.[15]

Once the family court has determined by a preponderance of the evidence [16] that a minor child is dependant due to neglect or abuse, the family court will hold a separate hearing to determine the temporary removal of the child pursuant to KRS 620.080. "The temporary removal hearing statute's substantive standard strikes the balance between parental rights and child protection by erring on the side of child protection. . . . The focus of a temporary removal hearing is the possibility of harm to the child rather than a determination of the truth or falsity of the dependency, neglect, or abuse petition's allegations" [footnote omitted].[17] The burden of proof is the same as at the adjudication hearing, *i.e.,* preponderance of the evidence; how-

12. KRS 610.080.

13. KRS 610.080(1); *see also* KRS 620.100(3).

14. KRS 620.100(3).

15. KRS 620.100(2); *see also* KRS 610.060(1)(a)(noting that both the child and his or her parents have a right to counsel at such hearings).

16. KRS 620.100(3).

17. 15 Graham & Keller *Kentucky Practice* § 6.15 (2003).

ever, at a temporary removal hearing, hearsay testimony is allowed for good cause.[18] Should the family court decide that the minor child should be removed from the home, it shall issue a temporary custody order stating "the specific reasons for removal and show[ing] that alternative less restrictive placements and services have been considered."[19]

KRS 620.140 provides that continuation in the home must "be contrary to the welfare of the child[.]"[20] This statute seems to indicate that the family court should make reasonable efforts to reunify a child with its family as defined in KRS 620.020(10).[21] However, pursuant to KRS 610.127(7), "[r]easonable efforts as defined in KRS 620.020 shall not be required to be made with respect to a parent of a child if a court of competent jurisdiction determines that the parent has: (7) Other circumstances in existence that make continuation or implementation of reasonable efforts to preserve or reunify the family inconsistent with the best interests of the child and with the permanency plan for the child."

In determining the temporary custody of a child found to be dependant, neglected, or abused, the family court shall make its determination based on the best interests of the child.[22] In determining custody in such a situation, the family court, or a district court "shall utilize the provisions of KRS Chapter 403[23] relating to child custo-

18. KRS 620.080(2).

19. KRS 620.090.

20. *See also* KRS 620.130(1).

21. *See* KRS 620.020(10) (stating that " '[r]easonable efforts' means the exercise of ordinary diligence and care by the department to utilize all preventive and reunification services available to the community in accordance with the state plan for Public Law 96–272 which are necessary to enable a child to safely live at home . . .").

22. *See* KRS 620.023 which states as follows:
(1) Evidence of the following circumstances if relevant shall be considered by the court in all proceedings conducted pursuant to KRS Chapter 620 in which the court is required to render decisions in the best interest of the child:
(a) Mental illness as defined in KRS 202A.011 or mental retardation as defined in KRS 202B.010 of the parent, as attested to by a qualified mental health professional, which renders the parent unable to care for the immediate and ongoing needs of the child;
(b) Acts of abuse or neglect as defined in KRS 600.020 toward any child;
(c) Alcohol and other drug abuse, as defined in KRS 222.005, that results in an incapacity by the parent or caretaker to provide essential care and protection for the child;
(d) A finding of domestic violence and abuse as defined in KRS 403.720, whether or not committed in the presence of the child;
(e) Any other crime committed by a parent which results in the death or permanent physical or mental disability of a member of that parent's family or household; and
(f) The existence of any guardianship or conservatorship of the parent pursuant to a determination of disability or partial disability as made under KRS 387.500 to 387.770 and 387.990.
(2) In determining the best interest of the child, the court may consider the effectiveness of rehabilitative efforts made by the parent or caretaker intended to address circumstances in this section.

23. KRS 403.270(2) states as follows:
The court shall determine custody in accordance with the best interests of the child and equal consideration shall be given to each parent and to any de facto custodian. The court shall consider all relevant factors including:
(a) The wishes of the child's parent or parents, and any de facto custodian, as to his custody;
(b) The wishes of the child as to his custodian;
(c) The interaction and interrelationship of the child with his parent or parents, his siblings, and any other person who may

dy and visitation."[24] Once a family court has made a disposition as to the temporary custody placement in a dependency, neglect, or abuse case, "[t]he family, custodian, guardian, legal representative of such child" may move the family court to continue the custody order prior to expiration.[25]

There is no dispute between the parties that the paternal grandmother and the paternal aunt were *de facto* custodians, as defined in KRS 403.270(1)(a), at the time of filing the motion for permanent custody of N.C. Thus, there is no dispute that the family court should have used the "best interests of the child" standard in determining N.C.'s custody between his *de facto* custodians and his biological father, B.C., as all are on equal footing.[26] However, the father's arguments lie in whether the family court erred in its analysis of KRS 403.270(2) and whether the father was given equal consideration with the *de facto* custodians.

significantly affect the child's best interest;

(d) The child's adjustment to his home, school, and community;

(e) The mental and physical health of all individuals involved;

(f) Information, records, and evidence of domestic violence as defined in KRS 403.720;

(g) The extent to which the child has been cared for, nurtured, and supported by any de facto custodian;

(h) The intent of the parent or parents in placing the child with a de facto custodian; and

(i) The circumstances under which the child was placed or allowed to remain the custody of a de facto custodian, including whether the parent now seeking custody was previously prevented from doing so as a result of domestic violence as defined in KRS 403.720 and whether the child was placed with a de facto custodian to allow the parent now seeking custody to seek employment, work, or attend school.

In reviewing a child-custody award, the appellate standard of review includes a determination of whether the factual findings of the family court are clearly erroneous.[27] A finding of fact is clearly erroneous if it is not supported by substantial evidence, which is evidence sufficient to induce conviction in the mind of a reasonable person.[28] Since the family court is in the best position to evaluate the testimony and to weigh the evidence, an appellate court should not substitute its own opinion for that of the family court.[29] If the findings of fact are supported by substantial evidence and if the correct law is applied, a family court's ultimate decision regarding custody will not be disturbed, absent an abuse of discretion.[30] Abuse of discretion implies that the family court's decision is unreasonable or unfair.[31] Thus, in reviewing the decision of the family court, the test is not whether the appellate court would have decided it differently, but whether the findings of the family

24. KRS 620.027 (stating that "[i]n any case where the child is actually residing with a grandparent in a stable relationship, the court may recognize the grandparent as having the same standing as a parent for evaluating what custody arrangements are in the best interest of the child").

25. KRS 610.120(1)(b).

26. KRS 403.270(2).

27. Kentucky Rules of Civil Procedure (CR) 52.01; *Reichle v. Reichle*, 719 S.W.2d 442, 444 (Ky.1986).

28. *Moore v. Asente*, 110 S.W.3d 336, 354 (Ky. 2003).

29. *Reichle*, 719 S.W.2d at 444.

30. *Cherry v. Cherry*, 634 S.W.2d 423, 425 (Ky. 1982); *Sherfey v. Sherfey*, 74 S.W.3d 777, 782 (Ky.App.2002).

31. *Kuprion v. Fitzgerald*, 888 S.W.2d 679, 684 (Ky.1994).

court are clearly erroneous, whether it applied the correct law, or whether it abused its discretion.[32]

The father begins his argument by contesting the family court's initial adjudication of neglect and order of removal of N.C. from his home. He argues that there was not sufficient evidence to justify the initial removal on September 18, 2003, and that that decision was based, in part, on hearsay evidence. This argument is not well founded.

The original family court action brought under KRS 620.070 had been final for two months prior to the filing of a motion for permanent custody of N.C. by the paternal grandmother and the paternal aunt. Pursuant to KRS 620.110, any person aggrieved by the issuance of a temporary order may appeal that decision. The father took no steps to do so, and even during the year in which the motion for permanent custody was filed and the hearing was held, the father neither filed a reply to the motion, nor did he file his own motion for custody. There was a substantial and valid basis for N.C.'s removal and the family court had jurisdiction. Thereafter, the child and the parents were properly represented and the matter proceeded to its conclusion following all constitutional due process protections and Kentucky statutory law. The family court's finding on the initial determination of neglect and removal were not clearly erroneous.

The father also argues that when making the custody award the family court should have considered the issues that led to the removal[33] and also the steps taken by him and the mother to alleviate the issues that led to the removal.[34] It is evident by reviewing the family court's custody order that the family court heard evidence regarding both of these issues and made appropriate findings.

The father also argues that the family court erred by failing to accept the findings of the expert witness, Dr. Stephen Alexander as Dr. Alexander provided the only expert testimony regarding the mother's mental condition. Dr. Alexander testified that the mother had no clinical psychopathology. First, it should be pointed out that the mother is not a party to this appeal and how this report affected her chances for custody of N.C. is moot. Regardless of whether the mother had a defined psychological condition, the family court supported its decision with overwhelming evidence of the mother's actions that were contrary to N.C.'s best interests. Therefore, we find no error by the family court as to this issue.

The father then argues that there was no evidence that he failed to protect N.C., but rather that there was evidence he had taken a different job to put him home on a regular basis, had supplied health insurance, and had bought various necessities for N.C. However, the father failed to request amended or additional findings pursuant to CR 52.02. When a party fails to make a CR 52.02 request for additional findings, CR 52.04 provides that:

> A final judgment shall not be reversed or remanded because of the failure of the trial court to make a finding of fact on an issue essential to the judgment unless such failure is brought to the attention of the trial court by written request for a finding on that issue or by a motion pursuant to Rule 52.02.

The father made no such motion. His failure to request additional findings of fact by the family court is fatal to his

---

**32.** *Sherfey,* 74 S.W.3d at 782–83.

**33.** KRS 403.270(2)(i).

**34.** KRS 620.023(2).

appeal as to the issue of the lack of such findings of fact.[35]

Our Legislature, through KRS 403.270(2), commands the family court to determine custody based on the best interests of the child, while considering all appropriate parties equally and considering all relevant factors. This Court has determined that there is no "significant difference" in the analysis required to make an award of joint custody versus sole custody.[36] The father argues that he was not given adequate consideration for joint custody of N.C. However, in reviewing the record and the family court's final order, it appears that the family court considered all relevant factors before determining what custody arrangement was in the best interests of N.C. The family court considered the evidence presented, including the testimony of the parties. Considering the clear evidence of abuse and neglect, we agree with the family court that the evidence overwhelmingly demonstrated that the father was unfit to parent N.C. Thus, the evidence in the record supports the family court's findings.

For the foregoing reasons, the order of the McCracken Family Court is affirmed.

ALL CONCUR.

---

**35.** *Eiland v. Ferrell,* 937 S.W.2d 713, 716 (Ky.1997)(citing *Cherry,* 634 S.W.2d at 423).

**36.** *Squires v. Squires,* 854 S.W.2d 765, 768 (Ky.1993).