**v.**

**J.H.; M.H.; B.J.H.; O.H.; Honorable Casey Hixon, Guardian *Ad Litem*; and Commonwealth of Kentucky, Cabinet for Health and Family Services, Appellees.**

No. 2010–CA–000792–ME.

Court of Appeals of Kentucky.

July 1, 2011.

Jonathan Sacks, Bowling Green, KY, for appellant.

Jack Conway, Attorney General, Rebecca Gibson, Special Assistant Attorney General, Frankfort, KY, for appellee, Commonwealth of Kentucky.

Before DIXON and NICKELL, Judges; SHAKE,[1] Senior Judge.

## OPINION

DIXON, Judge:

Appellant, L.D., appeals from an order of the Warren Family Court awarding permanent custody of her minor son, O.H., to Appellees, J.H. and M.H., who are O.H.'s paternal grandparents. Finding no error, we affirm.

In November 2003, O.H., along with his older sister and younger brother,[2] were removed from Appellant's home pursuant to KRS 620.090, because of environmental neglect and the fact that her husband was a registered sex offender. The children were placed with Appellant's parents, who were subsequently awarded permanent custody in January 2006. However, on August 10, 2007, the Cabinet for Health and Family Services filed a dependency, neglect, and abuse petition in the family court seeking emergency custody of all three children after reports of physical abuse by the maternal grandparents were substantiated. The children were thereafter placed in temporary foster care.

On September 8, 2008, temporary custody of O.H. was granted to Appellees. In September 2009, Appellees filed a motion for a designation as de facto custodians and an order of permanent custody. Following a hearing in March 2010, the family court entered an order finding that it was in O.H.'s best interest for Appellees to be granted permanent custody. Appellant thereafter appealed to this Court as a matter of right.

 This Court's standard of review of a family court's award of child custody in a dependency, abuse and neglect action is limited to whether the factual findings of the lower court are clearly erroneous. Kentucky Rules of Civil Procedure (CR) 52.01. Whether or not the findings are clearly erroneous depends on whether

---

1. Senior Judge Ann O'Malley Shake sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and Kentucky Revised Statutes (KRS) 21.580.

2. All three children have different fathers.

there is substantial evidence in the record to support them. CR 52.01; *Reichle v. Reichle,* 719 S.W.2d 442, 444 (Ky.1986). If the findings are supported by substantial evidence, then appellate review is limited to whether the facts support the legal conclusions made by the finder of fact. The legal conclusions are reviewed de novo. *Brewick v. Brewick,* 121 S.W.3d 524, 526 (Ky.App.2003). If the factual findings are not clearly erroneous and the legal conclusions are correct, the only remaining question on appeal is whether the trial court abused its discretion in applying the law to the facts. *B.C. v. B.T.,* 182 S.W.3d 213, 219 (Ky.App.2005). Finally,

> [s]ince the family court is in the best position to evaluate the testimony and to weigh the evidence, an appellate court should not substitute its own opinion for that of the family court. If the findings of fact are supported by substantial evidence and if the correct law is applied, a family court's ultimate decision regarding custody will not be disturbed absent an abuse of discretion.

*Id.*

■ Appellant first argues that the trial court erred in awarding permanent custody to Appellees because they lacked standing to commence a custody action. Specifically, relying upon KRS 403.270 and the decision in *Mullins v.Picklesimer,* 317 S.W.3d 569 (Ky.2010), Appellant contends that Appellees did not meet the requirements for de facto custodians.

KRS 403.270, provides in relevant part: "[D]e facto custodian" means a person who has been shown by clear and convincing evidence to have been the primary caregiver for, and financial supporter of, a child who has resided with the person for a period of six (6) months or more if the child is under three (3) years of age and for a period of one (1) year or more if the child is three (3) years of age or older or has been placed by the Department for Community Based Services. Any period of time after a legal proceeding has been commenced by a parent seeking to regain custody of the child shall not be included in determining whether the child has resided with the person for the required minimum period.

Appellant does not dispute that O.H. has resided with Appellees for well over six months. Rather, Appellant believes that because she has always "wished" to regain custody of O.H. and the Cabinet's permanency plan had a goal of returning O.H. to her care, she "commenced" a legal proceeding within the meaning of the statute. In other words, Appellant asks this Court to conclude that her "actions" equated to her filing a petition to regain custody and thus, Appellees failed to meet the requisite time requirements. We disagree.

As the family court found, Appellant has taken no legal action to regain custody of O.H. since his initial removal in 2003.[3] We simply cannot conclude that the legislature intended mere compliance with a permanency plan to equate to a legal proceeding under KRS 403.270. In any event, the family court further determined that Appellant has not complied with the permanency plan, resulting in the Cabinet's specifically recommending against the return of O.H. to her care.

■ Notwithstanding Appellant's interpretation of KRS 403.270, the family court correctly determined that because this

---

3. At a hearing on February 15, 2010, Appellant and her counsel were put on notice that the failure to file a motion for return of O.H. would be considered at the permanent custody hearing. Nevertheless, L.D. made no attempt to file any motion prior to the March 8, 2010 custody hearing.

matter originated as a dependency, abuse and neglect case under KRS Chapter 620, Appellees' standing is conferred by virtue of KRS 620.027, which provides in relevant part: "In any case where the child is actually residing with the grandparents in a stable relationship, the court may recognize the grandparents as having the same standing as a parent for evaluating what custody arrangements are in the best interest of the child." Once the family court makes a finding of a stable relationship between grandparent(s) and child, the court is to utilize KRS Chapter 403 to determine custodial arrangements.

Interestingly, during the March 8, 2010 hearing, the family court specifically asked Appellant's counsel to address KRS 620.027, at which time he refused to do so and instead focused on KRS 403.270. In this Court, however, Appellant attempts to negate the application of KRS 620.027 by arguing that O.H. did not have a stable relationship with Appellees. Appellant points to testimony at the hearing that O.H. was sometimes disruptive and defiant of Appellees, and that he had engaged in self-destructive conduct that had resulted in his being placed in the Children's Crisis Stabilization Unit for a short period of time. However, O.H.'s therapist and the Cabinet's counselors emphasized that his mental health issues were due to his diagnosis of oppositional defiance disorder, not any problem relating to Appellees. In fact, the family court found that Appellees were cooperative and supportive of O.H.'s mental health treatment while Appellant was not. We are of the opinion that substantial evidence supported the family court's finding that Appellees provided a stable environment for O.H. Accordingly, Appellees had standing under KRS 620.027 to petition for permanent custody of O.H.

■ Appellant next argues that Appellees waived their right to seek permanent custody of O.H. because they agreed to the Cabinet's permanency plan that had a stated goal of ultimately returning O.H. to Appellant's care. Although we find no indication that a waiver issue was presented to the family court, it is nevertheless without merit.

M.H. testified at the hearing that at the time Appellees were initially granted temporary custody of O.H., everyone involved hoped that he could eventually be reunited with Appellant. However, M.H. explained that it had become increasingly apparent that Appellant was not going to be able to care for O.H., and that the continued court proceedings were taking a serious toll on his mental health. For that reason, Appellees made the decision to proceed with permanent custody.

Appellant cites no authority and we find none for the proposition that agreement with a permanency plan is somehow a waiver of the right to subsequently seek custody. Appellees attempted to work with everyone involved to achieve the desired goal of returning O.H. to Appellant's care. However, as the Cabinet employees testified during the hearing, it had become apparent to all that returning O.H. to Appellant's care was not going to be possible and that the continued proceedings were damaging to O.H. To "penalize" Appellees or hold that their cooperation with the Cabinet's plan resulted in a waiver of their right to seek permanent custody is a precedent that we are unwilling to establish. To do so would certainly be detrimental to the Cabinet's purpose.

■ Next, Appellant contends that even if Appellees had standing, the family court did not give equal consideration to both parties in determining permanent custody. Further, Appellant complains that the family court refused to hear evidence

about her fitness to have O.H. returned to her.

KRS 403.270 states in pertinent part:

(2) The court shall determine custody in accordance with the best interests of the child and equal consideration shall be given to each parent and to any de facto custodian. The court shall consider all relevant factors including:

(a) The wishes of the child's parent or parents, and any de facto custodian, as to his custody;

(b) The wishes of the child as to his custodian;

(c) The interaction and interrelationship of the child with his parent or parents, his siblings, and any other person who may significantly affect the child's best interests;

(d) The child's adjustment to his home, school, and community;

(e) The mental and physical health of all individuals involved;

(f) Information, records, and evidence of domestic violence as defined in KRS 403.720;

(g) The extent to which the child has been cared for, nurtured, and supported by any de facto custodian;

(h) The intent of the parent or parents in placing the child with a de facto custodian; and

(i) The circumstances under which the child was placed or allowed to remain in the custody of a de facto custodian, including whether the parent now seeking custody was previously prevented from doing so as a result of domestic violence as defined in KRS 403.720 and whether the child was placed with a de facto custodian to allow the parent now seeking custody to seek employment, work, or attend school.

Furthermore, KRS 620.023 provides:

(1) Evidence of the following circumstances if relevant shall be considered by the court in all proceedings conducted pursuant to KRS Chapter 620 in which the court is required to render decisions in the best interest of the child:

(a) Mental illness as defined in KRS 202A.011 or mental retardation as defined in KRS 202B.010 of the parent, as attested to by a qualified mental health professional, which renders the parent unable to care for the immediate and ongoing needs of the child;

(b) Acts of abuse or neglect as defined in KRS 600.020 toward any child;

(c) Alcohol and other drug abuse, as defined in KRS 222.005, that results in an incapacity by the parent or caretaker to provide essential care and protection for the child;

(d) A finding of domestic violence and abuse as defined in KRS 403.720, whether or not committed in the presence of the child;

(e) Any other crime committed by a parent which results in the death or permanent physical or mental disability of a member of that parent's family or household; and

(f) The existence of any guardianship or conservatorship of the parent pursuant to a determination of disability or partial disability as made under KRS 387.500 to 387.770 and 387.990.

(2) In determining the best interest of the child, the court may consider the effectiveness of rehabilitative efforts made by the parent or caretaker intended to address circumstances in this section.

As previously noted, Appellant did not file a motion to regain custody of O.H. As such, the proceeding at issue herein was essentially limited to Appellees' motion for permanent custody. After reviewing the hearing and evidence presented below, we are convinced that the family court thoroughly analyzed all of the factors under both KRS 403.270(2) and KRS 620.023 in reaching its decision. Not only did the court determine that Appellees have provided O.H. with a stable and financially secure environment, and have worked with his school and counselors to ensure he is receiving all necessary treatment, but the court also made the following findings with respect to Appellant: (1) she has not sought return of O.H. since his removal in 2003; (2) she was aware of the abuse occurring to her children while in the maternal grandparents' care yet failed to disclose it to the Cabinet; (3) she has failed to obtain the court-ordered psychological evaluation to address her life-long issues of domestic abuse; (4) she has failed to follow through with the Cabinet's recommendation of life skills counseling; and (4) the Cabinet reported that she had threatened another child currently in her care. Importantly, all of the therapists and counselors involved herein unanimously agreed that O.H. needed permanency stability and that Appellees were providing such. In reviewing all of the statutory factors, the family court determined that it was in O.H.'s best interest for Appellees to be granted permanent custody. We cannot conclude that the family court's decision was an abuse of discretion. *B.C. v. B.T.*, 182 S.W.3d at 219.

Finally, Appellant argues that the family court erred in refusing to permit O.H. to testify in chambers since his wishes were relevant under KRS 403.270(2)(b). The record reflects that the night before the hearing, Appellant's counsel actually served a subpoena directly on O.H. rather than serving the guardian *ad litem*. Obviously such was in violation of CR 4.04(3). Moreover, it was noted during the hearing that O.H. reacted very poorly and became emotionally distraught. The subpoena was properly quashed by the family court during the hearing, based upon not only improper service but also upon O.H.'s therapist's recommendation that testifying would not be in O.H.'s best interest. Appellant did not thereafter seek to have O.H. properly served or have him testify by deposition. We find no error in the trial court's ruling.

For the reasons set forth herein, the Findings of Fact and Conclusions of Law of the Warren Family Court are affirmed.

ALL CONCUR.