RENDERED: DECEMBER 5, 2025; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2025-CA-0509-ME

P.B.                                                                          APPELLANT

                              APPEAL FROM BULLITT CIRCUIT COURT
v.                   HONORABLE MONICA K. MEREDITH, JUDGE
                              ACTION NO. 23-J-00293-001

COMMONWEALTH OF KENTUCKY,
CABINET FOR HEALTH AND
FAMILY SERVICES; J.B., A MINOR
CHILD; J.D.; AND L.B.                                             APPELLEES

OPINION
VACATING AND REMANDING

** ** ** ** **

BEFORE: CALDWELL, COMBS, AND EASTON, JUDGES.

CALDWELL, JUDGE: P.B. appeals from an order awarding permanent custody to a grandparent in a dependency, neglect, and abuse proceeding. Specifically, P.B. challenges the family court's finding that the Cabinet for Health and Family Services ("the Cabinet") rendered reasonable efforts. We vacate the permanent custody order and remand for further proceedings in conformity with this Opinion.

**FACTS**

P.B. ("Father") and J.D. ("Mother") are the parents of J.B. ("Child"),[1] who was born in 2014. L.B. ("Grandmother") is Father's mother and Child's paternal grandmother. Father and Child lived in Grandmother's home until Father left the home in the fall of 2023. Mother was living in another county and continues to reside in a different county. In late November 2023, Grandmother filed a dependency, neglect, and abuse petition concerning Child and the Bullitt Family Court issued an order placing Child in Grandmother's temporary custody.

The case proceeded to adjudication and disposition. The adjudication order indicated Father stipulated to neglect or abuse, and Mother stipulated to dependency. The disposition order called for continued placement with Grandmother. It also contained findings that reasonable efforts had been made to prevent Child's removal and that Father had not started working his case plan. Father did not appeal from the adjudication and disposition orders.

In October 2024, the Cabinet filed a Motion for Permanent Custody with an attached affidavit from the ongoing social worker. The Cabinet requested that Grandmother be awarded permanent custody of Child.

---

[1] To protect the minor child's privacy, we do not refer to the child or to the other individual parties in this case by name. *See also* Rules of Appellate Procedure ("RAP") 5(B)(2) ("Initials or a descriptive term must be used instead of a name in cases involving juveniles, allegations of abuse and neglect, termination of parental rights, mental health, and expungements.").

In December 2024, the family court conducted an evidentiary hearing on the permanent custody motion. The ongoing social worker testified for the Cabinet. Mother and Father also testified. Grandmother, who was not represented by counsel, did not testify. Nor did she attend the hearing.

The ongoing social worker testified that Father had not completed his case plan. She even testified that she was not aware of his completing any case plan requirements. The social worker also testified that Cabinet policy required her to contact parents monthly, but that sometimes her calls did not go through. She testified that Grandmother said Father had left his car at Grandmother's house, but he did not share his new address. She also said that when she did get in touch with Father, he said she was not doing her job. She testified to providing Father with information about providers with more flexible drug screening schedules to accommodate his work schedule but noted he had not completed drug screens for the Cabinet for several months.

On cross-examination, the social worker admitted that there may have been some months when it slipped her mind to contact Father although she was usually consistent about trying to contact parents. She also admitted that failure to contact Father monthly was not fair to him. She admitted it was possible Father told her where he worked but she did not think to look up the company to obtain

-3-

contact information and try to contact him at work. She also said the Cabinet did not have a standard intake form to record contact information.

Father testified to his efforts to stay involved in Child's life and to contact the social worker for assistance about completing case plan requirements. He testified to meeting with the ongoing social worker a time or two after she was assigned the case the previous March. He also testified to trying to contact her sometimes and her simply saying she had a lot of cases or not responding to him at all. He testified to once contacting the investigative social worker initially assigned to his case so the investigative worker could urge the ongoing social worker to contact him.

Father admitted to receiving his case plan. He also testified to undergoing mental health and substance abuse assessments (apparently, tasks on his case plan)[2] and stated these assessments resulted in no further recommendations. Father admitted to not having taken required parenting classes

---

[2] We are unaware of any complete written copy of Father's case plan in the record or any testimony clearly setting forth all of Father's case plan requirements. However, the assistant county attorney asked Father whether he had completed any case plan tasks, specifically asking about mental health and substance abuse assessments in addition to parenting classes and drug screens. The Cabinet's written reports filed shortly before adjudication and disposition hearings also contain recommendations that Father undergo mental health and substance abuse assessments. So, there are indications that undergoing mental health and/or substance abuse assessments were among the tasks on Father's case plan.

Although the ongoing social worker testified to not being aware of Father's completing any case plan tasks, her written report for a September 2024 permanency review stated that Father had completed mental health and substance abuse assessments during the investigative stage of the case. That discrepancy was not explored at the permanent custody hearing.

and to not having drug tested for the Cabinet since the prior February. He testified to having drug tested at his workplace and not having positive results, and indicated he was confused or lacked knowledge about how to be drug tested for the Cabinet given his work schedule. He testified to feeling overwhelmed or confused about how to achieve his case plan requirements and needing further guidance from the Cabinet on how to achieve these objectives.

After presentation of the evidence, Father's attorney argued that the Cabinet had failed to exercise due diligence or comply with its responsibilities. He pointed to the ongoing social worker's testimony that she was supposed to have contact with Father monthly but had failed to make contact some months.

The assistant county attorney, who represented the Cabinet, stated Father's testimony was compelling and that Father was not a lost cause for losing the child. But he also took note of evidence that Father had received a case plan yet had not fully complied with case plan requirements, such as attending parenting classes. He also pointed to evidence that Father had not participated in drug screens for the Cabinet since February 2024. But noting Father had stayed involved in the child's life and had stable employment, the assistant county attorney ultimately stated that he was deferring to the court's discretion.

Next, Child's Guardian *ad litem* ("GAL") suggested permanent custody might be premature despite the length of time the case was pending, given

evidence that the Cabinet may not have fully complied with its responsibilities and the requirement for reasonable efforts. Nonetheless, the GAL believed it was in Child's best interest to remain in Grandmother's home at that time.

After hearing argument, the family court orally announced it would grant the motion for permanent custody. At the end of the hearing, the court also appointed counsel for Grandmother to advise her about permanent custody and available services. Several days after the hearing, the court issued a written permanent custody order. The court found Father had not completed his case plan despite Child's having been in Grandmother's care for over twelve months. In fact, the court stated Father had not even begun to work his case plan. The court also took note of a lack of proof that Father had made any child support payments despite the court's ordering him to do so.

Father filed a motion to alter, amend, or vacate pursuant to CR[3] 59.05. After the family court denied the CR 59.05 motion, Father filed this appeal.[4]

---

[3] Kentucky Rules of Civil Procedure.

[4] Mother has not appealed from the permanent custody order or filed an appellee brief. The ongoing social worker testified Mother had completed her case plan and there were no concerns about Mother's ability to provide care or the appropriateness of her home. However, Mother stated she was consenting to Child's remaining with Grandmother in conformity with Child's wishes. And in response to the court's question, Mother's counsel affirmed that Mother consented to Grandmother's having permanent custody.

## ANALYSIS

### Statutory Requirements Governing the Family Court's Consideration of Permanent Custody in Dependency, Neglect, and Abuse Proceedings

Dependency, neglect, and abuse ("DNA") proceedings are governed by KRS[5] Chapter 620. KRS 620.027 states: "In any case where the child is actually residing with a grandparent in a stable relationship, the court may recognize the grandparent as having the same standing as a parent for evaluating what custody arrangements are in the best interest of the child."

KRS 620.027 also states that when a court makes permanent custody determination in DNA proceedings, it must "utilize the provisions of KRS Chapter 403 relating to child custody and visitation." KRS 620.027. KRS 403.270(2) provides that in determining a child's best interests, a court must consider factors including the wishes of the child, the parents, and any *de facto* custodian.

KRS 620.023 states:

(1) Evidence of the following circumstances if relevant shall be considered by the court in all proceedings conducted pursuant to KRS Chapter 620 in which the court is required to render decisions in the best interest of the child:

    (a) Mental illness as defined in KRS 202A.011 or an intellectual disability as defined in KRS 202B.010 of the parent, as attested to by a qualified mental health professional, which

---

[5] Kentucky Revised Statutes.

renders the parent unable to care for the immediate and ongoing needs of the child;

(b) Acts of abuse or neglect as defined in KRS 600.020 toward any child;

(c) Substance use disorder, as defined in KRS 222.005, that results in an incapacity by the parent or caretaker to provide essential care and protection for the child;

(d) A finding of domestic violence and abuse as defined in KRS 403.720, whether or not committed in the presence of the child;

(e) Any other crime committed by a parent which results in the death or permanent physical or mental disability of a member of that parent's family or household; and

(f) The existence of any guardianship or conservatorship of the parent pursuant to a determination of disability or partial disability as made under KRS 387.500 to 387.770 and 387.990.

(2) In determining the best interest of the child, the court may consider the effectiveness of rehabilitative efforts made by the parent or caretaker intended to address circumstances in this section.

## Standard of Review

This Court set forth the standard of review for awards of permanent custody to grandparents in dependency, neglect and abuse cases in *L.D. v. J.H.*, 350 S.W.3d 828 (Ky. App. 2011). Specifically, we review the family court's

factual findings for clear error, meaning that factual findings which are supported by substantial evidence will not be disturbed on appeal. *Id*. at 829-30. However, we review legal conclusions *de novo*. *Id*. at 830. Lastly, we review the court's custody decision itself for abuse of discretion. *Id.*

With these standards in mind, we consider Father's argument that the family court erred in finding the Cabinet made reasonable efforts. We also address an issue not raised by Father which immediately popped out to us on our review—the lack of clear indication in the record that Grandmother sought out or was willing to accept permanent custody of Child. We conclude the permanent custody decision must be vacated, and the case remanded for further proceedings to address these issues.

### The Decision Must be Vacated for a Reason Closely Related to Father's Reasonable Efforts Argument—Incomplete Analysis of KRS 620.023 Factors

Father's brief focuses on arguing that the family court erred in finding the Cabinet made reasonable efforts as defined by KRS 620.020(13). He claims the Cabinet failed to exercise "ordinary diligence and care" to "utilize all preventive and reunification services available to the community in accordance with the state plan for Public Law 96-272 which are necessary to enable the child to safely live at home[.]" *See* KRS 620.020(13). He emphasizes evidence that the Cabinet did not fully comply with its duty to maintain monthly contact with him.

-9-

Father points to the ongoing social worker's testimony that she had possibly forgotten to contact Father a few times and/or failed to meet with the parents monthly. And Father's brief alludes to his own testimony about the ongoing social worker's failing to respond to "his calls or messages or concerns with how and where he could complete case plan tasks[.]"

Father points to the GAL's oral suggestion that permanent custody for Grandmother may have been premature given evidence which could suggest a lack of reasonable effort by the Cabinet. He also emphasizes that the assistant county attorney deferred to the court on permanent custody.[6] However, Father cites to no statute specifically requiring a finding of reasonable efforts to award permanent custody in a DNA proceeding.

We note the family court utilized the AOC-DNA-9 (permanent custody) form. The AOC-DNA-9 form contains Conclusions of Law with standard language stating: "Reasonable efforts have been made to prevent removal of child from parental care or were not required by KRS 610.127." This standard language apparently alludes to the court's having previously determined that reasonable efforts were made to prevent removal in the disposition order.[7]

---

[6] Though he deferred to the court's discretion, the assistant county attorney did not withdraw the permanent custody motion.

[7] *See* KRS 620.140(1)(c): "Before any child is committed to the cabinet or placed out of his or her home under the supervision of the cabinet, the court shall determine that reasonable efforts

Besides this standard language from the AOC form, the permanent custody order contains no explicit finding regarding whether the Cabinet made reasonable efforts. Moreover, there is no clear statutory requirement that a family court make a finding regarding whether the Cabinet rendered reasonable efforts at the permanent custody stage of a dependency, neglect, and abuse proceeding. *Compare* KRS 620.027; KRS 403.270; KRS 620.023; KRS 620.140(1)(c); KRS 625.090(3)(c)1.

KRS 625.090 pertains to proceedings to involuntarily terminate parental rights, not to determinations of permanent custody in DNA proceedings. KRS 625.090 provides that if a child was placed with the Cabinet, the court ruling on a termination petition must determine whether the Cabinet has, prior to the filing of the petition: "Made reasonable efforts as defined in KRS 620.020 to reunite the child with the parents unless one or more of the circumstances enumerated in KRS 610.127 for not requiring reasonable efforts have been substantiated in a written finding by the District Court[.]" KRS 625.090(3)(c)1. No similar requirement is set forth in KRS 620.027, KRS 620.023, or KRS 403.270—statutes which govern permanent custody in this context. *See generally L.D.*, 350 S.W.3d 828.

---

have been made by the court or the cabinet to prevent or eliminate the need for removal and that continuation in the home would be contrary to the welfare of the child."

-11-

While no finding about reasonable efforts is specifically required by statute when a court rules on a permanent custody request in DNA proceedings, perhaps it is still appropriate to consider whether the Cabinet was making reasonable reunification efforts at this stage—as reflected by the concerns expressed by the GAL and Father. Obviously, the Cabinet's keeping in contact with and providing information about services can affect a parent's efforts towards rehabilitation and addressing the types of factors which often lead to children's removal—including acts of abuse and neglect and parental substance use and mental health concerns. *See generally* KRS 620.023.

A court ruling on a permanent custody motion in a DNA proceeding must consider not only the best interests factors listed in KRS 403.270(2), but also relevant factors listed in KRS 620.023. *See generally L.D.*, 350 S.W.3d at 832-33. Here, in not addressing the parties' expressed concerns about whether the Cabinet made reasonable efforts, the family court's analysis of KRS 620.023 factors was incomplete.[8]

---

[8] An award of permanent custody to a nonparent results in a parent's losing their superior right to custody. So, longstanding precedent requires a finding of parental unfitness before awarding permanent custody to a nonparent over a parent's objection. *Forester v. Forester*, 979 S.W.2d 928, 929 (Ky. App. 1998). Moreover, though the award of permanent custody does not completely sever one's parental rights, it may be a pivotal step leading towards termination especially if the permanent custody order contains a finding of parental unfitness. *Id.* at 930.

Assessments of whether the Cabinet has rendered reasonable reunification services may play a role in determining whether there are reasonable expectations of improvement in a parent's ability to provide care and necessities for his/her child. And at least some types of

The family court found that Father had not even begun to complete any case plan tasks. However, the court did not discuss evidence that Father had undergone mental health and substance abuse assessments. Instead, it appeared to rely solely on the ongoing social worker's testimony that she could not think of any case plan requirement which Father had completed. That testimony did not align with the social worker's own report, which indicated Father had completed mental health and substance abuse assessments.

The court expressly noted the social worker's testimony about having difficulty locating Father. However, the court did not discuss Father's testimony about having difficulty contacting the ongoing social worker and even calling the investigative social worker to urge the ongoing social worker to contact him.

Certainly, the family court had the prerogative as the factfinder to determine the weight and credibility of the evidence. *Moore v. Asente*, 110 S.W.3d 336, 354 (Ky. 2003). However, the family court made no explicit findings about the witnesses' credibility. Nor did it address how evidence that the Cabinet did not comply with all its duties, such as maintaining monthly contact with parents,

parental unfitness grounds identified in KRS 625.090 require a finding that there are no reasonable expectations of improvement. *See id.*; *see also* KRS 625.090(2)(e) &(g).

Father has not explicitly argued that the family court failed to make findings of his being unfit or there being no reasonable expectations of improvement. Nonetheless, his argument about reasonable efforts is not wholly unrelated to issues about parental fitness or whether there are reasonable expectations of improvement.

affected attempts to address factors leading to removal. *See generally* KRS 620.023.

Therefore, we vacate and remand for the family court to address how evidence of the Cabinet's failing to maintain monthly contact affected Father's efforts to address the reasons leading to removal and to make findings on all relevant KRS 620.023 factors accordingly.

Having addressed this error in the family court's KRS 620.023 analysis, we are also compelled to confront a glaring fault in the family court's KRS 403.270(2) findings.

**Permanent Custody Order Must Also be Vacated Due to Lack of Any Indication in the Record That Grandmother Was Willing to Accept Permanent Custody**

Father noted Grandmother did not attend the permanent custody motion hearing in the conclusion of his brief. This prompted our examining the record concerning Grandmother's participation—especially since the Cabinet filed the permanent custody motion, with an attached affidavit from the social worker rather than from Grandmother.

While we did not go looking for errors not raised by the parties, Father's pointing out Grandmother's lack of attendance caused us to stumble onto

the troubling fact that nothing in the record shows Grandmother sought out or was willing to accept permanent custody.[9]

In addition to Father's correctly pointing out Grandmother's lack of attendance at the permanent custody hearing, the record reflects that Grandmother was not represented by counsel during the hearing. We also note the permanent custody motion was filed by the Cabinet, with no verification by Grandmother. The ongoing social worker's affidavit and in-court testimony indicated that Child was doing well in Grandmother's home. But neither the motion nor the supporting affidavit said anything about Grandmother's wishes or whether anyone had discussed permanent custody with her. Nor did the social worker testify in person to discussing permanent custody with Grandmother or ascertaining her wishes. Grandmother also did not attend the two brief court hearings held between the filing of the permanent custody motion and the evidentiary hearing on this motion based on our review of the written record and the recorded hearings.

---

[9] *See Barker v. Commonwealth*, 341 S.W.3d 112, 114 (Ky. 2011) ("This issue was not raised on appeal. Neither did this Court go looking for it. However, we bump into it squarely out of the gate because of the general objection to the justification of giving the instruction in the first place. While this Court will not go looking for error not called to our attention, neither can we ignore one which is so glaring and flows naturally under our appellate review of the issue raised."). *See also Priestley v. Priestley*, 949 S.W.2d 594, 596 (Ky. 1997) ("[W]e will not long tarry to consider the contention that the Court of Appeals had no right to decide the case on an issue not raised on appeal. So long as an appellate court confines itself to the record, no rule of court or constitutional provision prevents it from deciding an issue not presented by the parties. While it is widely recognized that appellate courts should be reluctant to engage in such a practice, their discretion is broad enough to prevent a conclusion that it has been abused.") (citations omitted). *See also W.H.J. v. J.N.W.*, 669 S.W.3d 52, 55 (Ky. App. 2023).

At most, Grandmother presumably received a copy of the permanent custody motion based on the certificate of service, and the record does not show Grandmother took steps to oppose this motion. Moreover, the family court appointed counsel for Grandmother at the conclusion of the permanent custody hearing, and Grandmother filed no motion to vacate the permanent custody order. Grandmother was also not present at the hearing on Father's motion to vacate, and no one spoke on her behalf at the hearing on the motion to vacate.[10] Nor did Grandmother file an appellee brief or her own appeal to make her wishes clear.

Despite the lack of indication in the record concerning Grandmother's wishes, the family court checked boxes on the permanent custody order indicating it considered the wishes of the child, the parents, and any *de facto* custodian.[11] The written order specifically notes that Mother testified to consenting to Grandmother's having permanent custody of Child because Mother wanted to comply with Child's wishes. Moreover, Mother and Father testified to their wishes

---

[10] Father's CR 59.05 motion does not list Grandmother or her counsel on the certificate of service. The family court's order denying the CR 59.05 motion has a checked box indicating Grandmother's counsel was present. However, based on our viewing of the hearing recording, court personnel did not orally note the presence of Grandmother or her counsel. Nor did anyone say anything on Grandmother's behalf. Also, there is no clear visual indication that Grandmother or her counsel was present either virtually (by Zoom or other platform) or in person in the courtroom. It is somewhat difficult to visually discern who appeared by videoconference due to hazy picture quality, however.

[11] The family court never explicitly determined that Grandmother was a *de facto* custodian. However, Grandmother was at least arguably entitled to the same standing as the parents in determining custody matters pursuant to KRS 620.027.

at the evidentiary hearing—with Father objecting to Grandmother's getting permanent custody. However, Grandmother did not testify as to her wishes at the hearing nor did the permanent custody order contain any specific findings about her wishes.

KRS 620.027 suggests that Grandmother was entitled to the same standing in the custody proceeding as Child's parents. This is especially true since Child had lived with Grandmother for at least a year and evidence (including social worker testimony) was presented indicating Child was doing well in Grandmother's care.[12] However, nothing in the record shows that Grandmother sought out or was willing to accept permanent custody—despite the obligation to consider the wishes of the child, parents, and any *de facto* custodian set forth in KRS 403.270(2). There is no evidence, nor even any pleadings or oral statements at court hearings, to support any finding that Grandmother wished to have permanent custody of Child.

We recognize the parties have made no appellate arguments about the lack of indication in the record that Grandmother sought out or was willing to accept permanent custody. Nonetheless, we may properly resolve glaring issues not raised by the parties which flow naturally from our appellate review so long as

---

[12] Father did not explicitly argue any issues about standing in his brief. Nor did he raise any constitutional challenge to KRS 620.027.

we confine ourselves to the record. *See generally Barker*, 341 S.W.3d at 114; *Priestley*, 949 S.W.2d at 596. And though no one else directly pointed out to the family court the lack of indication in the record about Grandmother's wishes, it was surely palpable error to award permanent custody to Grandmother with no reflection of Grandmother's wishes in the record. *See generally* CR 61.02.

Indeed, the family court was clearly aware that transitioning from temporary custody to permanent custody would have a significant effect—as shown by its appointing counsel for Grandmother at the end of the permanent custody hearing. The court would have been wise to make the appointment of counsel for grandmother prior to the hearing being conducted. Yet the family court had already stated it was granting Grandmother permanent custody prior to appointing counsel—despite the lack of any statement by Grandmother in the record that she understood the ramifications of being Child's permanent custodian and was willing to undertake the obligations inherent in being a minor's permanent custodian.

Thus, the award of permanent custody to Grandmother is vacated and remanded for further proceedings. Upon remand, permanent custody shall not be awarded to Grandmother without Grandmother's acknowledgment in the court record that she is knowingly willing to accept permanent custody of Child and all that entails.

-18-

## CONCLUSION

For the foregoing reasons, the permanent custody order is hereby **VACATED,** and this case is **REMANDED** to the family court for further proceedings in conformity with this Opinion.

ALL CONCUR.

BRIEF FOR APPELLANT:                NO BRIEF FOR APPELLEE.

Dalen Lance
Shepherdsville, Kentucky