Angela MAXWELL, Appellant,

v.

Robert MAXWELL, Appellee.

No. 2012–CA–000224–ME.

Court of Appeals of Kentucky.

Oct. 19, 2012.

Lori A. Kinkead, Elizabethtown, KY, for Appellant.

Jeremy S. Aldridge, Elizabethtown, KY, for Appellee.

Before CLAYTON, KELLER and MAZE, Judges.

## OPINION

CLAYTON, Judge:

Angela Maxwell appeals the decision of the Hardin Family Court to award sole custody of her three children to their father, Robert Maxwell. After careful review, we reverse and remand.

## FACTS AND PROCEDURAL BACKGROUND

Angela and Robert married on October 8, 1994, in Arkansas. Three children were born during the marriage: J.H.M. on September 6, 1997, S.M.M. on July 8, 1999, and J.T.M. on September 4, 2005. After nearly sixteen years of marriage, the parties separated on September 20, 2010. Robert filed the petition for dissolution of the marriage on September 28, 2010, wherein he moved for sole custody of the children. Angela responded to the petition and asked for joint and shared custody of the children. A short time after filing the petition for dissolution, Robert also filed a petition for a domestic violence order against Angela, which the court denied on October 8, 2010.

After the separation and during the pendency of the action, the parties entered into a "pre-temporary" agreed order on October 19, 2010, which provided for joint custody and shared parenting time. The parenting time alternated the physical custody of the children on a week-to-week basis. Besides delineating the custody and parenting time, the order also stated that neither parent would permit a non-family guest to stay overnight during the week that the parent had physical custody of the children. The parties operated under this agreement until the final hearing.

In January 2011, Robert filed a motion to hold Angela in contempt of court for alleged violation of the "pre-temporary" order. Robert, in an affidavit, stated that he believed Angela was having overnight guests in violation of the order. Later, Angela filed a motion asking for a restraining order to keep Robert from contacting her in person and not to harass her on the phone or at work. These motions were passed for a later time. Ultimately, on March 11, 2011, the court issued a mutual restraining order.

Meanwhile, the parties settled all issues related to the divorce except the issues concerning the children. One aspect of the settlement agreement was that Robert was to have exclusive use of the marital residence. The settlement agreement was filed on January 20, 2011. The order reserved the issues of custody, parenting time, child support, and related matters. Then, on September 29, 2011, the family court held a hearing on the issues related to the children. At the hearing, Robert requested joint custody and that he be

designated primary residential custodian; Angela requested joint and shared custody pursuant to the current arrangement. Additionally, Angela asked that the prohibition on non-family guests spending the night during the parenting time be lifted.

At the hearing, the parties, Heather Pena, Fred Marion, Dorothy Brown, Chace Herringshaw, Jaime Blanc, and the two older children testified. Heather Pena, a friend of the family, was the first witness on behalf of Robert. She lives in Louisiana and was a close friend of the family prior to their move to Kentucky. She had not had minimal contact with the family over the last year and stated that she is no longer involved in Angela's or the children's lives. Further, Heather's testimony was about events that occurred prior to the parties' separation. Heather alleged that Angela's medications impaired her ability to parent the children but, as noted, she has not recently spent significant time with her. Moreover, Heather admitted that she, too, takes anti-depressants and that such medication does not necessarily impair a person's ability to parent. (Angela says that she now takes her medicine at night which eliminates any drowsiness.) Heather testified that on occasion Angela drank excessively when the children were present. On cross-examination, after stating that Robert was a good parent, she noted that Robert, too, on occasion had also been drinking heavily and behaving inappropriately in front of the children.

Fred Marion also testified on behalf of Robert. He works with Robert and is a friend of the family. Fred opined that Robert was a good father and always put his children first. He also stated that he has met Angela's friend, Angel. Fred described her as "different." He also recounted that when he met Angel, he was concerned with the appropriateness of her language. Fred reacted negatively to the language used in front of his child.

Dorothy Brown, Angela's mother and the children's maternal grandmother, testified. Dorothy lives in Arkansas and stated that she has spent time with the children six times since the separation. She believes the children are doing well and that Angela is a wonderful mother. Next, Jaime Blanc, the youngest child's kindergarten and first-grade teacher, testified telephonically. Jaime described the child as very special and extremely intelligent. She shared that he had some adjustment problems when the parties initially separated. But Jaime stated that now, a year later, she no longer sees the same level of anger and that these behaviors have greatly diminished. Further, Jaime expressed an opinion that any change in the current custody arrangement could be difficult for the child.

Chace Herringshaw, the youngest child's soccer coach, also testified. Besides stating that Angela was an excellent mother, he provided information that the youngest child missed the annual soccer parade. The parade fell on a day that the children were with Angela. Chase informed the family court that he never told her directly about the parade; however, information about the parade was disseminated at a soccer practice that occurred during a week of Angela's parenting time.

At the end of the hearing, the two older children testified. They said that they were happy with the current parenting time arrangement, that is, spending every other week with a different parent. Although the children did not indicate their awareness of the relationship between their mother and Angel, they both stated that they like Angel and had no problems with her.

The trial court issued its findings of fact, conclusions of law, decree, and order on

January 5, 2012. In its order, the trial court awarded Robert sole custody of the children with Angela to have visitation under a schedule set by the court. The allotted parenting time was less than the minimum guidelines found in the Hardin Family Court Local Rules. In addition, the trial court prohibited both parties from cohabitating with another adult, unless they were married to that person, during the time that they had physical possession of the children. It is from this judgment that Angela appeals.

## STANDARD OF REVIEW

■ The standard of review in a child custody case is whether the trial court's factual findings are clearly erroneous. *B.C. v. B.T.,* 182 S.W.3d 213 (Ky.App. 2005). Findings of fact may be set aside only if they are clearly erroneous. Kentucky Rules of Civil Procedure (CR) 52.01. And, a factual finding is not clearly erroneous if it is supported by substantial evidence. *Reichle v. Reichle,* 719 S.W.2d 442, 444 (Ky.1986). Substantial evidence is evidence sufficient to induce conviction in the mind of a reasonable person. *Moore v. Asente,* 110 S.W.3d 336, 354 (Ky.2003). Hence, a finding of fact is viewed as clearly erroneous if not supported by substantial evidence of a probative value. *Black Motor Co. v. Greene,* 385 S.W.2d 954 (Ky. 1964).

"If the findings are supported by substantial evidence, then appellate review is limited to whether the facts support the legal conclusions made by the finder of fact." *London v. Collins,* 242 S.W.3d 351, 354 (Ky.App.2007). The test for the reviewing court is not whether it would have come to a different conclusion, but whether the trial court applied the correct law and whether the trial court abused its discretion. *B.C.,* 182 S.W.3d at 219–20. Abuse of discretion implies arbitrary and capri-

cious action that results in an unreasonable and unfair decision. *Sherfey v. Sherfey,* 74 S.W.3d 777, 783 (Ky.App.2002), *overruled on other grounds by Benet v. Commonwealth,* 253 S.W.3d 528 (Ky.2008). With this standard in mind, we now turn to the case at hand.

## ANALYSIS

Angela is arguing that the family court's judgment is flawed for the following reasons: (1) the court erred by considering factors unrelated to the best interests of the children; (2) the court's award of sole custody to Robert is clearly erroneous and an abuse of discretion; (3) the court based its decision on inadmissible evidence; and (4) the court erred by restricting the parties from cohabitating during parenting time. In essence, Robert counters that the court's ruling was not based on Angela's sexual orientation, was not an abuse of discretion, and was based on the best interests of the children in accordance with the applicable statutory factors.

Pursuant to Kentucky Revised Statutes (KRS) 403.270(2), the trial court must "determine custody in accordance with the best interests of the child[,]" giving equal consideration to each parent. In making that determination, the court should consider, in pertinent part, the wishes of the parents and children; the interaction and interrelationship of the children with the parents; the children's adjustment to home, school, and community; the mental and physical health of all involved; and any evidence of domestic violence, to the extent it has an impact on the children and their relationship with the parents. *Id.* at (a-f).

■ In reviewing the family court's decision, we must determine whether its findings of fact were supported by substantial evidence, that is, evidence that is sufficient to induce conviction in the mind

of a reasonable person. To ascertain the best interests of the children, the family court notes that it is required to consider the applicable factors outlined in KRS 403.270(2)(a–f). Yet, the court in its decision does not specifically reference the statutory factors as it makes its findings. Thus, in our review, we will discuss each factor in particular that the family court referenced in general. The pertinent sections of KRS 403.270(2) are as follows:

(a) The wishes of the child's parent or parents, and any de facto custodian, as to his custody;

(b) The wishes of the child as to his custodian;

(c) The interaction and interrelationship of the child with his parent or parents, his siblings, and any other person who may significantly affect the child's best interests;

(d) The child's adjustment to his home, school, and community;

(e) The mental and physical health of all individuals involved;

(f) Information, records, and evidence of domestic violence as defined in KRS 403.720;

Beginning with the first factor, the wishes of the children's parents, the parties have a difference of opinion. Robert maintains that the joint and shared custody is not working. Primarily, in outlining his displeasure with the current shared custody, he refers to Angela's involvement in a same-sex relationship, her usage of medication for mental health issues, her lack of involvement with the children, and her use of tobacco even though two children have allergies and one has asthma. In contrast, Angela wants the current arrangement to continue because she believes that it is working well for the children.

To buttress her position, Angela points out that Robert was aware of her relationship with Angel when he agreed to the current arrangement, which has been in effect for almost a year. Angela denies that she is less involved with the children. In response to this allegation by Robert, Angela explains that she has been working for the Navy Federal Credit Union only a short period, and therefore, does not have the same flexibility that Robert has with his long-held job. Moreover, on the weeks that the children are with Angela, she has established a work schedule that allows her more time with them. Nonetheless, Angela clarifies that sometimes she is not able, because of her employment, to make every practice or event for all three children. In fact, these events may overlap. Further, she acknowledges that, just like in any busy family, there can be miscommunication or missed information about activities. In response to Robert's concerns about her medication, Angela contends that her medication does not interfere with her care of the children, nor does she use tobacco in a manner detrimental to the children.

The next factor is the wishes of the children. The two older children both testified that the current shared custody was working well, that they liked it, that they liked both parents, and that they wanted it to continue. The youngest child's teacher testified that, while the child had difficulties when the parties separated, he was doing very well now. Further, she cautioned that the decision be based on the best interests of the children, not the adults, and expressed her opinion that another change in the custody could be problematic for the child.

The next statutory factor for the court to address is the interaction and interrelationship of the child with his parents, siblings, and any other person who may sig-

nificantly affect the child's best interests. The record demonstrates that on all accounts the parents and children express positive remarks about the parent-child interaction.

Robert, however, reports communication issues with Angela. He mentioned that Angel sent him inappropriate text messages on New Year's Eve. Robert admitted that he had originally sent Angel inappropriate text messages. Angela was not implicated or approving of the interchange between them. And nothing was provided to show that the children had seen or heard or even knew about the text messages. Angela also filed a motion for a restraining order when Robert came to her house, banged on the door, and demanded that the youngest child go with him. The police came, spoke with Robert, and left. Ultimately, the court entered mutual restraining orders and no other incidents were discussed.

These comments are equally relevant to the next factor—the children's adjustment to home, school, and community. First, the parents have kept the children in the same school district in spite of the fact that Angela does not live in that district and must provide transportation to the children's school. Angela, in particular, has stated that she wants the children to remain in their current school. Besides the educational stability for the children, Robert has kept the marital residence so that the children are able to remain in the family home during Robert's week of physical possession.

The fifth statutory factor is the mental and physical health of all individuals involved. The children are healthy although asthma and allergies are issues for two of them. Evidence was presented that Angela and Angel do smoke. But, Angela maintains that they both smoke outside or in the bathroom with a fan running. During the children's testimony, they referred to them smoking outside or in the bathroom, although one stated that Angela smokes in the car on occasion but not often. As far as Angela's health, she takes medication for mental health issues but nothing was provided that suggested this interfered or impaired her ability to care for the children. Finally, with regard to the last factor of domestic violence, early in the divorce action, Robert filed a petition for domestic violence, which was denied. While the parties have mutual restraining orders, the overall picture is that the parties cooperate for the benefit of the children.

Having reviewed the record and the findings, we now turn to the family court's decision to award Robert sole custody. We begin by addressing Angela's contention that the court erred by considering factors unrelated to the best interests of the children. The focus of the family court's decision was that Angela's same-sex relationship was harmful to the children. The family court states in its order:

> The Respondent is seeking to live an unconventional life-style that has not been fully embraced by society at large regardless of whether or not same-sex relationships should or should not be considered sexual misconduct. Like it or not, this decision will impact her children in ways that she may not have fully considered and most will be unfavorable.

Findings of Fact, Conclusions of Law, Decree, and Order, entered January 5, 2012, at 17.

First, we observe that under the statutory mandate of KRS 403.270(2), the court is required to determine custody based on the best interests of the child by considering the factors discussed previously herein. Apparently, in this case, the family court considered Angela's sexual orientation and relationship with another woman to be

harmful to the children and possible misconduct. Kentucky jurisprudence on child custody mandates that a court determine custody in accordance with the best interests of the child in mind, equal consideration given to each parent, and a consideration of all relevant factors. It then lists certain factors. No listed factor specifically cites a parent's sexual orientation.

The statute's next section states that "[t]he court shall not consider conduct of a proposed custodian that does not affect his relationship to the child." KRS 403.270(3). Therefore, Kentucky's custody statute is designed to focus on conduct that disturbs the interaction between the parent and child. Here, the family court's decision relies heavily on Angela's same-sex relationship as problematic without demonstrating that the children were harmed or that their relationship with Angela was harmed. In fact, the evidence suggested that the children were adjusting quite well if not thriving. Thus, under KRS 403.270(2), the court is to consider all relevant factors; however, KRS 403.270(3) does not allow sexual orientation to be a determining factor unless there is a direct negative impact on the children.

Therefore, pursuant to KRS 403.270(3), the family court may consider the misconduct of a proposed custodian as a factor in the determination of custody, but it must first conclude "that such misconduct has affected, or is likely to affect, the child adversely." *Krug v. Krug*, 647 S.W.2d 790, 793 (Ky.1983). As observed, no such evidence, anecdotal or expert, was provided. Still, the court is "not required to wait until the children have already been harmed before he can give consideration to the conduct causing the harm." *Id.* And, the family court relied on *Krug* for the proposition that if the sexual misconduct is ongoing, the court may consider the future effect on the children.

The issue posed by the family court's reasoning is whether involvement in a same-sex relationship constitutes sexual misconduct. Here, Angela and Angel are engaged in a committed, same-sex relationship. We observe initially that the Kentucky Supreme Court recognized that homosexual activity between consenting adults may not be criminalized by the state. *Commonwealth v. Wasson*, 842 S.W.2d 487 (Ky.1992). This factor bolsters the reasoning that mere participation in a same-sex relationship is not sexual misconduct. In *Mullins v. Picklesimer*, 317 S.W.3d 569 (Ky.2010), the Kentucky Supreme Court concluded in a situation involving a same-sex relationship, which had ended, the circumstances of the parties' relationship demonstrated the mother's lesbian partner had standing to seek custody of the child after the relationship. Legally, we conclude that being a member of a same-sex partnership alone does not meet the criterion for sexual misconduct.

■■■■ In addition, not allowing a parent to have custody of a child because of a threat of private discrimination violates the due process and equal protection clauses of the federal and state constitutions. Although sexual preference has not enjoyed federal constitutional protection under the due process clause, the United States Supreme Court has said in other contexts that homosexuals may not be singled out for disparate treatment. *Romer v. Evans*, 517 U.S. 620, 116 S.Ct. 1620, 134 L.Ed.2d 855 (1996). We believe that the court's determination that because Angela is in a same-sex relationship, it is sexual misconduct is not only incorrect but also singles her out for disparate treatment. Further, the United States Supreme Court held in *Palmore v. Sidoti*, 466 U.S. 429, 104 S.Ct. 1879, 80 L.Ed.2d 421 (1984), in a case involving interracial marriage that custody cannot be denied based on the

private biases of others. Hence, characteristics such as race, religion, or sexual identity provide no basis for generalized court concern. Finally, in *Vinson v. Sorrell,* 136 S.W.3d 465 (Ky.2004), the Court said that "[p]arents of a child have a fundamental, basic and constitutional right to raise, care for, and control their own children." *Id.* at 468 (footnote omitted). Thus, it is a violation of Angela's due process, equal protection, and fundamental right to parent her children using only her sexual orientation as a determinative factor.

Equally striking is that no evidence was provided that demonstrated the relationship between Angela and Angel had any negative impact on the children. And, as required statutorily, "[t]he court shall not consider conduct of a proposed custodian that does not affect his relationship to the child." KRS 403.270(3). Here, the family opined that Angela's relationship represented a continual pattern of conduct, no intent to relinquish the conduct, and that it is **not in the best interests of the child.** Still, no factual findings were provided that supported Angela's actions as harmful to the children—now or in the future.

The only issue specifically mentioned by the family court, which was related to future harm to the children, is that the children might be teased about their mother's same-sex relationship and that it might cause difficulty with the parents' communication. If the children are subject to teasing, it will likely occur whether their mother has custody or not. The harm from removing them from a positive and loving relationship with their mother seems much more consequential. As far as communication problems, most divorcing couples with children must learn after a breakup to communicate properly and deal with conflict. Angela's sexual orientation does not seem causative or primary to these par-

ents' difficulties with communication. In sum, the evidence indicated that the children are thriving and that the present arrangement for physical custody of them has not hampered the parents communicating about the children's schooling, extracurricular activities, health matters or vacations. Harm to these children must have an evidentiary basis and cannot be assumed. Here, harm has not been shown.

In the order entered January 5, 2012, on page nine the family court writes that "[t]he primary catalyst causing the parties from being unable to amicably resolve their conflict is the Respondent's current homosexual relationship. . . ." This statement is indicative of the importance placed on Angela's same-sex relationship by the family court. In fact, the issue is not whether the parties resolve their conflict but whether joint custody by the parents is in the best interests of the children. Robert, in his brief, stated that if the trial court's decision was based on Angela's sexual orientation, the decision would be an abuse of discretion. Appellant's brief, page 7. We agree with Robert. Hence, the family court abused its discretion when it awarded sole custody to Robert based on Angela's current relationship with a woman.

The family court in its opinion observed that no statutory preference exists for an award of joint custody and that it requires joint decision-making and significant participation by both parents in the children's upbringing. The family court then returns to the problems associated with Angela's same-sex relationship. The primary emphasis in the family court's decision is that the parties' communication would be hindered because of the same-sex relationship.

In 1993, the Kentucky Supreme Court rendered *Squires v. Squires,* 854 S.W.2d

765 (Ky.1993), a decision cited by the family court, wherein the Court discussed at length the concept of joint custody and held that a cooperative spirit between parties was not a condition precedent to the entry of a joint custody award. *Id.* at 768. Although there have been some communication issues, no evidence was provided that the communication between Angela and Robert is so terrible that sole custody is the only solution. In fact, the evidence on the record showed that notwithstanding the awkwardness of the separation, the children were doing well academically, continuing to participate in extracurricular activities, enjoying spending time with both parents, and adjusting appropriately to the new situation. Simply put, the children are flourishing. The fact that the children are adjusting speaks very highly of the parents' focus on their children's well-being, even with the personal conflict between them. It is our conclusion that the family court was clearly erroneous in its determination that the best interests of the children would only be served by awarding sole custody to Robert.

Our evaluation of the findings of fact leads us also to ascertain that the family court's decision was clearly erroneous. We conclude that certain findings here are unsupported by substantial evidence of a probative value. As we stated above, we do not believe that the parties' communication is so hindered that they could not parent the children in a joint custody arrangement. Next, we do believe that Angela's use of medicine is an issue. Many parents successfully take medication for mental issues. Further, Angela's smoking, while problematic if done in the presence of her children, is not sufficient to suggest that sole custody is necessary. She indicated, and it was corroborated, that she takes steps to not smoke in the presence of the children. Angela's purported non-involvement with her children appears to be a normal adjustment to having three children and a full-time job.

■ Angela's next major contention is that the family court erred by improperly basing its decision on inadmissible evidence. She maintains that the text messages offered in evidence by Robert of the interchange between Angel and him were "hearsay" and, accordingly, not admissible. Kentucky Rules of Evidence (KRE) 801(c) defines hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." She cites *G.E.Y. v. Cabinet for Human Resources,* 701 S.W.2d 713 (Ky. App.1985), for the proposition that the error in admission of unreliable evidence cannot be deemed harmless. The first part of our Court's statement therein, however, is that when a judge is the fact-finder, "it is presumed that he will be able to disregard hearsay statements." *Id.* at 715.

Our assessment, however, is that the family court did not err in allowing testimony about the text messages. First, Angela admitted that the texting occurred, thus waiving any objection to its mention. Second, the actual text messages were not admitted. And, the incident was not to prove the truth of the matter but only to demonstrate the hostility between the parties. Here, we are confident that the judge, as fact-finder, discerned the proper weight of the evidence. Thus, the family court did not err in allowing testimony about the text messages.

Finally, we deal with Angela's argument that the family court abused its discretion by restricting the parties from cohabitating with a person that he or she is not married to during parenting time. Because we are remanding this case to the family court, the prohibition on non-family members spending the night should be retried on remand. This retrial must be done

with the understanding that the cohabitation of any party, while a factor, is not dispositive on its own. It must be ascertained with the children's best interests in mind. Clearly, changes in moral standards and the inability of same-sex couples to legally marry are also relevant. Consequently, the family court must determine the efficacy of the prohibition based on the best interests of the children.

## CONCLUSION

Accordingly, the order of the Hardin Family Court is reversed and remanded for proceedings consistent with this opinion.

MAZE, judge, concurs.

KELLER, Judge, concurs in result only.