

# Missouri Court of Appeals

### Southern District

### Division Two

| | |
|---|---|
| STATE OF MISSOURI, | ) |
| | ) |
| Plaintiff-Respondent, | ) |
| | ) |
| vs. | ) No. SD32417 |
| | ) |
| CHRISTOPHER RYAN BEARD, | ) **Filed: April 16, 2014** |
| | ) |
| Defendant-Appellant. | ) |

APPEAL FROM THE CIRCUIT COURT OF GREENE COUNTY

Honorable Michael J. Cordonnier, Circuit Judge

## AFFIRMED

In September 2012, a jury found Christopher Ryan Beard (hereafter "Beard" or "Defendant") guilty of distributing a controlled substance on three separate occasions in February 2011. *See* section 195.211, RSMo Cum. Supp. 2012.[1] The trial court subsequently imposed seven-year sentences on each count to run currently with one another but consecutively to any sentence(s) Defendant might already be serving.

In two points relied on, Defendant asserts the trial court: 1) "abused its discretion in overruling [Defendant]'s motion to compel disclosure of the confidential informant's identity"; and 2) erred in not "interven[ing] *sua sponte* and declar[ing] a mistrial or issu[ing]

---

[1] Counts I and II of the amended information charged Defendant with distributing more than five grams of marijuana on February 22, 2011 and February 28, 2011. Count III charged Defendant with distributing cocaine on February 28, 2011.

a curative instruction when the State elicited testimony from [a police officer] that disclosing the identity of confidential informants is dangerous because of the possibility that the suspect or his friends will retaliate against the informant[.]"

Finding no merit in either point, we affirm.

## Facts and Procedural Background

Defendant does not contest the sufficiency of the evidence to support his convictions, and we limit our summary of the facts to those necessary for an understanding and resolution of his points.[2]

In July 2012, Defendant filed a "MOTION FOR DISCLOSURE OF INFORMANT" ("the motion"). The motion alleged that a "confidential informant ["CI"] participated in the alleged drug transactions by taking the drugs from [Defendant] and handing them to the police officer." The motion maintained that "[d]isclosure of [CI]'s identity is necessary . . . for [Defendant] to have a fair trial" and "[d]isclosure of [CI] will allow [Defendant] and his counsel to conduct an investigation into the merits of the allegation[s]."

*Evidence presented at the motion hearing*

Springfield Police officer Bryan Welch testified that on February 22, 2011, CI contacted him and said that he "knew Christopher Beard and that Beard would sell [Officer Welch] $100 worth of marijuana and that [they] would meet Beard at his residence at [a particular house on] East Erie." Officer Welch testified that he had worked with CI "[p]robably 20" times before, but he was not CI's "controlling officer[.]" A controlling officer handles things like getting payments to confidential informants who are working for

---

[2] We view the facts in the light most favorable to the jury's verdicts. ***State v. Kerns***, 389 S.W.3d 244, 246 (Mo. App. S.D. 2012).

money or managing confidential informants who are cooperating with law enforcement because of their own criminal charges.

Officer Welch "checked DOR[3] records" for a photograph of Beard before leaving to make the transaction, and he testified that the person's photograph he observed in those records was "consistent" with the person he subsequently dealt with during the transactions in question. Officer Welch also discovered that the utilities for the residence were listed under another man's name, but he said that Beard later indicated that his cousin lived at the residence.

Officer Welch transported CI to the residence on East Erie "around 3:30 in the afternoon," and he saw Beard come out of the garage. "Beard handed [CI] a bag with what was consistent with marijuana" through the vehicle's window as Officer Welch and CI sat in their vehicle. CI handed the bag to Officer Welch, who then reached over CI to hand Beard $100. "Beard talked about other prices, what [Officer Welch] could get a quarter pound for, what [he] could get an ounce and a half ounce for, and . . . he just said that this was good stuff that [Officer Welch] was getting[.]" Officer Welch attempted to record the transaction, which took "[t]wo minutes, maybe[,]" but due to "difficulties with the recorder[,]" no recording was made. Beard's name was not used during the transaction.

On February 28th, Officer Welch interacted with Beard on two separate occasions. On the first, Officer Welch had planned on meeting Beard with CI at the East Erie address, but Beard called CI and asked them to pick him up at a liquor store. Upon arriving at that location "in the early afternoon[,]" around 1:00 or 1:30, Beard got into the rear passenger side of Officer Welch's vehicle, and they drove from the liquor store to the East Erie

---

[3] Presumably an acronym for the Missouri Department of Revenue, which includes the Department of Motor Vehicles.

3

address. Beard "jumped out and went inside." After a few minutes, Beard came out of the house and got back into the vehicle. Beard handed CI a "plastic bag consistent with marijuana inside of it." After CI handed the bag to Officer Welch, Officer Welch handed $100 to Beard. Officer Welch then drove Beard to "a parking lot . . . at an apartment complex." This transaction was not recorded.

Later that night, Officer Welch believed that CI had contacted Beard again and that Beard told CI not to "come to the house" on East Erie this time, but to park north of it. Beard had previously discussed his willingness to sell a gram of cocaine for $60. When Officer Welch and CI went to the location specified by Beard, Beard approached their car and got in. Beard "handed a little bag of white powder to [CI], CI handed it to [Officer Welch,]" and Officer Welch "handed Beard $60 in cash." Officer Welch then gave Beard a ride back to the same apartment complex where he had taken Beard earlier in the day. This transaction also was not recorded.

After presenting the officer's testimony, defense counsel simply argued that Defendant "maintains that he's not the person that was met, that met Officer Welch. Given the short period of time that [Officer Welch] had an opportunity to view and have contact with the seller . . . there needs to be an opportunity to cross-examine [CI] to make sure that the person that they [sic] knew is [Defendant]." The State argued that the evidence at the hearing did not "indicate that there's a reason why [CI] needs to be disclosed in this case[.]" The trial court denied the motion "[s]ince [Officer Welch] was present during the buy[.]"

*The evidence at trial*

Officer Welch identified Defendant as the person who sold him marijuana and cocaine on the dates in question. He testified that Defendant "had black g[au]ges in his

4

earlobes" on each occasion.[4]  Upon request by the State, the trial court instructed Defendant to walk to the jury rail to give the jury "a chance to look at [his] ears."

Officer Welch testified that Defendant was in his presence for "[t]hree to five minutes" during the first transaction.  During the second transaction, Defendant spent about "35 to 40 minutes" in Officer Welch's vehicle.  The third transaction "only took a few minutes[,]" but it then took another "10 to 15 minutes" to give Defendant a ride back to the apartment complex.[5]

Dustin Martin, a member of the police surveillance team that assisted with all three transactions, testified that he was unable "to positively identify" the subject, but "the subject in all three buys was consistent in . . . stature, size."

The prosecutor elicited the following general testimony about confidential informants from Officer Welch without drawing any objection from Defendant:

> Q.     Let me ask you, why is it important not to disclose the identity of a confidential informant?
>
> A.     Confidential informants, they're -- we don't want to get them hurt. We don't want their families to get hurt for doing the right thing on trying to help the police out.  We take that very seriously. So we try not to disclose their information.
>
> Q.     And what types of dangers or risks are associated if a confidential informant's identity is disclosed?

---

[4] Officer Welch explained:

> A gauge is, once you have your ears pierced it's got [sic] a tiny hole, and then you put rings, which go inside the whole [sic] which gradually make them bigger and bigger, and then you have a real big hole where your earlobe is or -- well, your earlobe has a big hole in it.

Defense counsel impeached Officer Welch's testimony with the fact that his report did not reflect that Defendant had ear gauges.

[5] Defense counsel impeached these time estimates with the officer's testimony from the motion hearing that the first transaction took two minutes, the second transaction took 15 to 20 minutes, and the third took 10 minutes.

A.      The suspect could do retaliation.  He could have his buddies do retaliation on the confidential informant, and we don't want that to happen.

Q.      Is it fair to say that day to day you are living in a potentially dangerous environment?

A.      Yes.

Q.      Have you personally been involved in any transaction when things did turn dangerous?

A.      No.

In her closing argument, defense counsel did not "dispute that somebody sold drugs to Officer Welch."  She also argued, "We've agreed this whole time that the drugs were sold, that they were controlled substances and that that occurred, but my client, [Defendant], maintains his innocence.  He maintains his innocence.  He was not the person that [sic] sold the drugs to Officer Welch."

During the prosecutor's rebuttal, the following argument and objection occurred:

The only dispute that has arisen in this trial is whether [Defendant] was the one who did it.

[Defense counsel] has just gotten up here and she has tried to imply that there is argument against that fact, that there is argument against the fact that [Defendant] was the person who [Officer] Welch met with.

There is no support of [sic] that.  There has been no proof of that, there has been no evidence supporting that somebody else may have been involved.  The only thing -- evidence that you have heard is support that he was the one --

| | |
|---|---|
| [Defense Counsel]: | Objection, Your Honor.  I think that shifts the burden to us trying to -- having to prove something that is the State's burden to prove. |
| [The Trial Court]: | The objection is overruled.  The [trial court has] given the jury instructions as to who has the burden of proof. |

6

Defendant's motion for new trial alleged error in the denial of "[D]efendant's pre-trial motion to reveal [CI]." Defendant also alleged that "[t]he trial court erred in denying [D]efendant's objection to the State's [rebuttal] argument during closing that [D]efendant did not offer any evidence thereby shifting the burden[.]" The motion for new trial did not include any reference to Officer Welch's testimony that it is generally dangerous to disclose a confidential informant's identity because of the risk of retaliation.

The trial court denied Defendant's motion for new trial, Defendant was sentenced as set out above, and this appeal timely followed.

**Analysis**

*Point I – Nondisclosure of CI's identity*

Defendant argues that "the trial court abused its discretion when it overruled [Defendant]'s motion to disclose the identity of [CI]. [Defendant] argued both at trial and during the motion hearing that Officer Welch had mistaken him for someone else."[6] Defendant asserts that CI was "crucial to [the] defense of mistaken identity," "the State did not offer a justification for non-disclosure to outweigh the need to disclose[,] the credibility of Officer Welch was questionable[,] . . . [and] the State used the fact that [CI] did not testify against [Defendant] during its closing argument."[7]

---

[6] Defendant acknowledges that he did not raise the motion again during trial but argues that he was not in a position to make an offer of proof concerning CI's testimony because he could not interview CI without disclosure of CI's identity. He also argues that "there was no opportunity [at trial] for [him] to object to any evidence connected to the issue of disclosure[.]" The better practice would have been for Defendant to raise the issue again at trial, outside the hearing of the jury, and ask the trial court to reconsider its pretrial ruling. However, the State does not argue that Defendant failed to preserve the issue for appellate review, and we will assume, *arguendo*, that the issue was properly preserved.

[7] A review of the trial transcript reveals that the argument that "the State used the fact that [CI] did not testify against [Defendant] during its closing argument" is misplaced. The State did not make use of CI's absence from trial to suggest that CI's testimony would have supported the State's case. The prosecutor argued -- in response to defense counsel's closing argument that Defendant was not involved in the drug deals -- that "[t]here has been no proof of that, there has been no evidence supporting that somebody else may have been involved. The only thing -- evidence that you have heard is support that [Defendant] was the one --[.]" And

7

The United States Supreme Court has recognized "the Government's privilege to withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with enforcement of that law." *Roviaro v. United States*, 353 U.S. 53, 59 (1957). The privilege exists to protect effective law enforcement and encourages, by the preservation of anonymity, "citizens to communicate their knowledge of the commission of crimes to law-enforcement officials[.]" *Id.* Missouri also recognizes the privilege. *State v. Edwards*, 317 S.W.2d 441, 446 (Mo. banc 1958); *see also* Rule 25.10(B).[8] The privilege extends to situations where the informant not only provides information, but actually assists law enforcement with an undercover transaction. *See State v. Coleman*, 954 S.W.2d 1, 5-6 (Mo. App. W.D. 1997) ("the informant [was] an active participant" in drug purchase, but defendant did not establish sufficient factors to overcome the privilege protecting disclosure of the informant's identity).

"Concepts of fundamental fairness create exceptions to the rule in some cases, however, and there are circumstances in which disclosure of the identity of an informant is essential to enable defendant to adequately establish a defense." *State v. Sproul*, 786 S.W.2d 169, 171 (Mo. App. W.D. 1990). As the Supreme Court stated in *Roviaro*:

> no fixed rule with respect to disclosure is justifiable. The problem is one that calls for balancing the public interest in protecting the flow of information

---

when the argument was made, Defendant objected on the ground that the State was attempting to shift improperly the burden of proof to the Defendant, not that it was being made to suggest than any testimony from CI would have supported the State's case.

[8] Rule 25.10(B) provides:

> The following matters shall not be subject to disclosure:
>
> . . . .
>
> (B)  An informant's identity where his identity is a prosecution secret, a failure to disclose will not infringe the constitutional rights of the defendant, and disclosure is not essential to a fair determination of the cause. Disclosure shall not be denied hereunder as to the identity of an informant to be produced at a hearing or trial.

(All rule references are to Missouri Court Rules (2013)).

against the individual's right to prepare his defense.  Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors.

353 U.S. at 62.  Ultimately, "[i]t is the burden of the defendant to develop a record showing the need for disclosure."  *Sproul*, 786 S.W.2d at 171.

The determination of whether a defendant can have a fair trial without disclosure of the identity of an informant rests within the sound discretion of the trial court.  *State v. Gray*, 926 S.W.2d 29, 32 (Mo.App.1996); *State v. Shannon*, 892 S.W.2d 761, 764 (Mo.App.1995).  In reviewing a trial court's ruling on this issue, the appellate court must balance the relevance and importance of disclosure to the defense against the State's need for nondisclosure.

*State v. Rollie*, 962 S.W.2d 412, 415 (Mo. App. W.D. 1998).  "A trial court abuses its discretion when its ruling is clearly against the logic of the circumstances and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration."  *State v. Johnson*, 207 S.W.3d 24, 40 (Mo. banc 2006).  If reasonable persons could disagree about whether the trial court's ruling was proper, then "no abuse of discretion will be found."  *Id.*  And, the defendant must show "that there is a 'real probability' that he was prejudiced by the abuse of discretion."  *Id.* (quoting *State v. Oates*, 12 S.W.3d 307, 311 (Mo. banc 2000)).

Defendant acknowledges the privilege recognized in *Roviaro*, but he asserts he is entitled to prevail based on its statement that "[w]here the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way."  353 U.S. at 60-61.

9

In *Roviaro*, the informer conducted a night-time narcotics transaction that culminated with the petitioner putting a package in the informant's car while parts of the event were observed or heard by officers located some distance away, including one officer who was hidden in the trunk of the informant's vehicle. *Id.* at 56-57. The Court also noted that there was some testimony from another government witness "that [the informant] denied knowing petitioner or ever having seen him before." *Id.* at 64-65. The Court found that "where the Government's informer was the sole participant, other than the accused, in the transaction charged[,]" it was prejudicial to withhold the informant's identity. *Id.* at 64-65. The outcome in *Roviaro* is not required here because CI was not the sole participant with Defendant in the three offenses; Officer Welch was also directly involved.

Defendant also relies on *State v. Nafziger*, 534 S.W.2d 480, 481, 483 (Mo. App. K.C.D. 1975), where an informant and an officer were both present for a drug transaction, and the reviewing court found that the "refusal to disclose the informant's identity constituted reversible error." There, the informant told an officer that a third party was selling cocaine from a certain house, and the officer and the informant went to the house.[9] *Id.* at 481. The alleged seller was not present, and the officer and informant left. They returned later, and eventually another individual at the house -- identified as "Bill" -- sold cocaine to the officer in the informant's presence. *Id.* The officer later identified the defendant as "Bill" based upon an alias name for Bill, an "examination of a photograph[,] and a visit to the tavern where the defendant worked[.]" *Id.* The defendant in that case presented evidence supporting his defense of mistaken identity by taking the witness stand and testifying that he was not involved. *Id.* at 482.

---

[9] The time of the transaction is not disclosed in the opinion.

10

The *Nafziger* court found that "the substantial issue threaded through the entire transcript [wa]s the question of the possible mistaken identity by [the officer] of the defendant. That the informant's testimony would have been relevant and material on the issue of identification is apparent." *Id.* at 482. The court also observed that unlike some other cases, "there [wa]s no witness other than the informant who could be called on behalf of the defendant." *Id.* at 483. The court reasoned:

> The case for disclosure is enhanced when the balancing test is applied. It is clear that defendant's defense at trial was mistaken identity. For defendant to pursue this defense, availability of the only other witness to the transaction—the informant—was very important. But beyond its mere allegation that disclosure would endanger the life of the informant, the state says nothing. Indeed, the evidence is that the informant is no longer being used by the police, and no effort was made by the state to present any facts to weigh the scales toward nondisclosure.

*Id.* at 483-84.

In *Wandix*, our high court "conclude[d] that disclosure of the identity of the informant was 'essential to a fair determination' on the facts and issues of th[e] case. The trial court abused its discretion in failing to require disclosure." 590 S.W.2d at 86. In *Wandix*, the investigation began on an "early evening" in the month of July when two officers met an informant and went to a location for a single drug transaction.[10] *Id.* at 83. One officer did not know the seller in advance, and one officer "may have seen him before." *Id.* at 83. The informant had identified the seller by the defendant's name. *Id.* The opinion does not disclose whether the defendant testified at trial as to mistaken identity, but it does reveal that he presented alibi testimony from four witnesses. *Id.*

---

[10] In *Wandix*, there was "uncertainty as to whether the informant entered the residence" where the transaction actually occurred as two officers gave conflicting testimony on the subject, but the informant was the individual who introduced the officer who purchased the drugs to the seller. 590 S.W.2d at 83. Our high court reasoned that more important than whether the informant was present for the purchase was the broader question of whether the informant was present "'at some critical stage of the proceedings so that he is qualified to testify concerning the essential facts in the case.'" *Id.* at 85 (quoting *Nafziger*, 534 S.W.2d at 482).

11

Under those circumstances, the Court stated:

> In summary, the rule requires disclosure where the informant was in a position to offer testimony relevant and crucial to the defense; [i]. e. disclosure would not be required if the testimony were on minor or collateral issues or if the testimony would be merely cumulative of that of other neutral parties. The degree of cruciality necessary to require disclosure must be balanced against the State's need for non-disclosure; [i]. e. possible non-disclosure where the informant is still active in other investigations and the accused's need is minimal.

*Id.* at 85.

The Court cited *Roviaro's* suggestion of "three possible defenses for which the informant's testimony could be vital: entrapment, [m]istaken identity of the person or package, and lack of knowledge of the contents of the package." *Id.* (citing 353 U.S. at 64). The Court engaged in a balancing analysis, determining that the defendant's "need for the testimony was great" because despite having alibi witnesses, "there were no other witnesses who could offer direct testimony except for the police officers. In such circumstances of relevancy and need, the State's interest on balance, is weak." *Id.* at 86. The Court observed that the informant was not "being used in ongoing investigations" and the "interest in being able to tell an informant that his identity will never be revealed, even after he is inactive" was "not of sufficient magnitude to justify non-disclosure where the informant could provide relevant testimony at trial." *Id.*

Consistent with the principle from *Roviaro* "that no fixed rule with respect to disclosure is justifiable[,]" 353 U.S. at 62, and given that the competing interests must be balanced in each case, *id.*, it cannot be said that the informant's identity must always be disclosed when the informant participated in some aspect of a controlled buy. *See Coleman*, 954 S.W.2d at 5 ("Although participation is a major factor for the trial court to consider, participation alone does not always mandate disclosure").

12

The State relies on ***Coleman***, a case in which the western district of our court found that the defendant had failed to satisfy his burden "to develop a record showing the need for disclosure" of an informant's identity when the informant made the drug transaction while the officer watched from about "forty to fifty feet" away. ***Id.*** at 3, 5. The Western District stated that in addition to the informant's participation, "other factors, such as mistaken identity, contradictory testimony, or a denial of the accusation, or where the informant is the sole witness to the crime charged," may require the disclosure of the informant's identity "for purposes of fairness." ***Id.*** at 5. Applying that test, it found that the defendant had "not sufficiently established any of the other factors which might necessitate the disclosure of the informant's identity." ***Id.*** at 6. In particular, "[t]here was no contradictory testimony, and no denials of the accusation, as [the defendant] did not present any evidence." ***Id.*** The court also reasoned that the informant was not the only witness, as the officer "watched the entire transaction from his vehicle." ***Id.***

While the defendant in ***Coleman*** did assert mistaken identity, the Western District found that "he was required to demonstrate more than bare assertions or speculative or conclusory allegations in support of his claim. Arguments and statements of counsel are not evidence of the facts presented." ***Id.*** Significantly, the defendant

> failed to show, either by demonstrating weakness in the State's case or by development of a defense, that disclosure was needed because of a genuine question of mistaken identity or any other issue. [The defendant] did not raise a substantive question as to [the officer's] ability to identify him as the seller; on the contrary, [the officer's] identification of [the defendant] was positive and unequivocal, despite vigorous cross-examination by [defense counsel].

***Id.*** *Cf.* ***State v. Dowell***, 25 S.W.3d 594, 609 (Mo. App. W.D. 2000) ("the appellant did not make a record sufficient to support his motion for disclosure of the" informant's identity

13

where the only support for the theory that the informant was an active participant in the offense was argument by defense counsel).

The State argues that in the instant case, as in *Coleman*, Defendant failed to develop a record to show "that there was a viable mistaken identity defense which depended on the disclosure of the informant."[11] We agree.

Defendant replies that *Coleman* is inapposite "because it appears that there was no evidence at all presented during the hearing on the motion to disclose the confidential informant." The *Coleman* opinion states that "[a]t the pre-trial hearing on the motion, [the defendant's] trial counsel reiterated some of these factual allegations [made in the pre-trial motion], adding that [the officer] was forty-five to fifty feet away from the actual scene of the crime, and that [the officer] had never stopped or arrested [the defendant] before." *Id.* at 5. Defendant does not explain why any failure by the State to present evidence would excuse a defendant from meeting his obligation to present evidence supporting his mistaken identity defense.

The relevant facts here are similar to those present in *Coleman*, and are distinguishable from those present in *Nafziger* and *Wandix*. In each of the latter cases, the defendant presented some evidence which suggested that disclosure of the informant's identity was essential to the defense theory of the case. In *Nafziger*, the defendant testified. 534 S.W.2d at 482. In *Wandix*, the defendant presented the testimony of four alibi witnesses. 590 S.W.2d at 83. Indeed, even in *Roviaro*, a government witness testified that the informant had denied that he knew the petitioner or had ever seen him before. 353 U.S.

---

[11] The State also cites *State v. Myers*, 997 S.W.2d 26, 34-35 (Mo. App. S.D. 1999), but that case focused on whether the identity of two informants had been disclosed in a timely fashion. No relief was granted because the "[d]efendant did not develop a need for further or earlier disclosure, and there [wa]s no showing of fundamental unfairness or that the trial court abused its discretion in refusing to grant [the] defendant's [pre-trial] motion." *Id.* at 35.

14

at 64-65. Unlike Defendant and the defendant in *Coleman*, the defendants in these cases did not rely on "bare assertions or speculative or conclusory allegations in support of [their] claim[s]." 954 S.W.2d at 6.

Here, defense counsel's assertion that mistaken identity was at issue was not evidence, and while Defendant attempted to impeach Officer Welch's testimony, no evidence was presented at either the motion hearing or at trial that suggested Defendant could not have been the person who sold Officer Welch the drugs.[12] Here, as in *Coleman*,

> [Defendant] has not sufficiently established any of the other factors [beyond participation in the event] which might necessitate disclosure of [CI]'s identity. There was no contradictory testimony, and no denials of the accusation, as [Defendant] did not present any evidence. [CI] was not the sole witness to the crime charged[.]

954 S.W.2d at 6.

Defendant's argument that "the State did not attempt to justify its need for nondisclosure at the hearing" misses the mark. It was Defendant's burden "to develop a record showing the need for disclosure." *Sproul*, 786 S.W.2d at 171. "[T]he rule requires disclosure where the informant was in a position to offer testimony relevant and *crucial* to the defense . . . [and] [t]he degree of cruciality necessary to require disclosure must be balanced against the State's need for non-disclosure[.]" *Wandix*, 590 S.W.2d at 85 (emphasis added).[13]

---

[12] As noted by the State during oral argument, this was not a case where such a showing would have required Defendant to testify. This case is unlike the situation in *Nafziger*, where the defendant testified that he was not involved and the court found that there was no other witness except the informant who could be called to testify. 534 S.W.2d at 482-83. Here, evidence presented at the motion hearing included that the drug seller said that his cousin also lived in the house on East Erie, and that the officer learned that the utilities for the East Erie address were in another person's name. Assuming as true the defense theory of mistaken identity, someone other than Defendant could presumably have testified that Defendant did not live in the house on East Erie.

[13] If Defendant had met his burden to produce evidence in support of his mistaken identity defense so as to require the trial court to engage in the balancing test required by *Roviaro*, the fact that there were three meetings between Officer Welch and the drug seller here as compared to the single meetings that occurred in

15

Defendant's failure to present any evidentiary support for his asserted defense of mistaken identity left the trial court with nothing to balance against the State's general need for nondisclosure.  As a result, the State's general privilege to withhold disclosure of CI's identity was not overcome, and Point I fails.[14]

*Point II – Unchallenged generic testimony about informants*

Defendant's second point contends the trial court should have "intervene[d] *sua sponte* and declared[d] a mistrial or issue[d] a curative instruction" when Officer Welch testified "that disclosing the identity of confidential informants is dangerous because of the possibility that the suspect or his friends will retaliate against the informant[.]"  Defendant asserts this testimony "was presented only to imply to the jury that [Defendant] was dangerous."  Because Defendant lodged no objection to the testimony when it was presented at trial, he concedes that we may only review his claim for plain error.

"A claim not properly preserved for appellate review may be considered for plain error at our discretion[,]" **State v. Irby**, 254 S.W.3d 181, 192 (Mo. App. E.D. 2008), and such discretion "is to be used sparingly[.]"  **State v. Thesing**, 332 S.W.3d 895, 899 (Mo. App. S.D. 2011).  "Unless a claim of plain error facially establishes substantial grounds for believing that manifest injustice or miscarriage of justice has resulted, we will not exercise our discretion to review for plain error."  **Id.**  "On direct appeal, plain error can serve as the basis for granting a new trial only if the error was outcome-determinative."  **State v. Bartlik**, 363 S.W.3d 388, 391 (Mo. App. E.D. 2012).  "The burden of proving the existence of such a

---

*Wandix* and *Nafziger* would then have been a significant factor for the trial court to consider in determining whether disclosure was "crucial to [the] defense of mistaken identity[.]"  590 S.W.2d at 83; 534 S.W.2d at 481.
[14] Even if we had found that the trial court abused its discretion by refusing to order the State to disclose CI's identity, a reversal would not have been required in this case because Defendant has not shown "a 'real probability' that he was prejudiced by the abuse of discretion."  *Johnson*, 207 S.W.3d at 40 (quoting *Oates*, 12 S.W.3d at 310).  Officer Welch had face-to-face contact with the drug seller on three separate occasions, two of which occurred during daylight hours.

manifest injustice or miscarriage of justice rests on Defendant." *State v. Campbell*, 122 S.W.3d 736, 740 (Mo. App. S.D. 2004).

Here, Officer Welch testified that the police generally "try not to disclose . . . information" about informants in an effort to protect them from possible retaliation by a suspect or "his buddies" and thereby place the informant in a potentially dangerous environment. Defendant argues that "it is likely that because the informant was not disclosed in the present case, the jury would infer that [Defendant] was a dangerous person with respect to the informant." But a risk that the jury might draw such an inference was not present here because Officer Welch also specifically testified that he had not "personally been involved in any transaction when things did turn dangerous[.] As a result, no facial demonstration of manifest injustice or miscarriage of justice appears.

Point II is also denied, and the judgment of conviction and sentence is affirmed.

DON E. BURRELL, J. - OPINION AUTHOR

NANCY STEFFEN RAHMEYER, P.J. - CONCURS

MARY W. SHEFFIELD, J. - CONCURS