RENDERED: MARCH 10, 2023; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2022-CA-0136-MR

CHAD FITZPATRICK                                                    APPELLANT

v.                  APPEAL FROM GREENUP CIRCUIT COURT
                    HONORABLE JEFFREY L. PRESTON, JUDGE
                    ACTION NO. 21-CI-00403

JEANETTE CALLOWAY AND
CODIE O'NEAL RITCHIE                                                APPELLEES

OPINION
AFFIRMING

** ** ** ** **

BEFORE: CALDWELL, DIXON, AND TAYLOR, JUDGES.

CALDWELL, JUDGE: Chad Fitzpatrick ("Fitzpatrick") appeals from the Greenup

Circuit Court order denying his petition requesting a change of custody of his

minor child, C.F. His mother, the Appellee Jeanette Calloway ("Calloway") had

been granted custody of the child in 2010 and Fitzpatrick sought to change that

circumstance with his petition filed in 2021. We affirm.

## FACTS

A child, C.F., was born to Fitzpatrick and Codie O'Neal Ritchie in March of 2006. Within a year of the child's birth, her paternal grandmother, Calloway, was granted custody; both parents were deemed not able to care for her due to substance abuse issues. A permanent custody order granting Calloway continued custody of the child was entered in 2010.

Over the following years, Fitzpatrick would visit with his daughter several times a month, but her mother rarely exercised visitation. In late 2021, Fitzpatrick filed a petition seeking a change in custody. A hearing was held pursuant to his petition.

C.F. testified she would like to see her father more often, but her grandmother would not allow her to do so. The court found that C.F. was a good student who was on the basketball and track teams at Russell High School. C.F. testified that she had been having problems getting along with her grandmother and complying with her grandmother's wishes.

At one point Calloway had placed C.F. in a mental health facility for treatment, where she stayed for less than a week. Following her discharge, C.F. continued to receive counseling. Calloway testified that she did not keep her son from being involved in his daughter's life or schooling. But she had concerns

about the stability of his living situation, given his past drug use and the fact that his live-in girlfriend had previously kicked the child out of the home during a visit.

Biological mother, Codie O'Neal Ritchie, testified that she texted with her daughter and met with her once at a restaurant when the child's father was enjoying visitation. She expressed her desire to share custody with the child's father. She testified she had been sober for over nine (9) years.

Fitzpatrick charged that his mother interfered with his relationship with his daughter and would speak poorly about him to his child. He testified he has a stable home in South Point, Ohio, but would be willing to pay tuition for the child to continue to attend Russell High School. He testified to having over four (4) years of sobriety.

The guardian *ad litem* told the court that the child, then almost sixteen (16) years of age, wished to live with her biological mother and father and no longer wanted to live with her grandmother. Indicating the child was intelligent and astute, he supported her desire to live with her father and spend an equal amount of time with her mother.

The trial court found that it was clear that the relationship between the child and her grandmother had deteriorated. However, the only grounds for the motion were that the child wanted to live with her biological parents. The court found no proof to support removing custody from Calloway, citing that C.F. has

been in the custody of the grandmother for almost the entirety of her life and there had been no showing that continued custody with Calloway was not in the child's best interest. The court denied the petition to change custody. This appeal followed.

## STANDARD OF REVIEW

In reviewing a trial court's order on petition seeking a change of custody, when the trial court's findings of fact are not clearly erroneous, the reviewing court must only determine whether the trial court abused its discretion.

> The standard of review in a child custody case is whether the trial court's factual findings are clearly erroneous. *B.C. v. B.T.*, 182 S.W.3d 213 (Ky. App. 2005). Findings of fact may be set aside only if they are clearly erroneous. Kentucky Rules of Civil Procedure (CR) 52.01. And, a factual finding is not clearly erroneous if it is supported by substantial evidence. *Reichle v. Reichle*, 719 S.W.2d 442, 444 (Ky. 1986). Substantial evidence is evidence sufficient to induce conviction in the mind of a reasonable person. *Moore v. Asente*, 110 S.W.3d 336, 354 (Ky. 2003). Hence, a finding of fact is viewed as clearly erroneous if not supported by substantial evidence of a probative value. *Black Motor Co. v. Greene*, 385 S.W.2d 954 (Ky. 1964).

> "If the findings are supported by substantial evidence, then appellate review is limited to whether the facts support the legal conclusions made by the finder of fact." *London v. Collins*, 242 S.W.3d 351, 354 (Ky. App. 2007). The test for the reviewing court is not whether it would have come to a different conclusion, but whether the trial court applied the correct law and whether the trial court abused its discretion. *B.C.*, 182 S.W.3d at 219-20. Abuse of discretion implies arbitrary and

capricious action that results in an unreasonable and unfair decision. *Sherfey v. Sherfey*, 74 S.W.3d 777, 783 (Ky. App. 2002), *overruled on other grounds by Benet v. Commonwealth*, 253 S.W.3d 528 (Ky. 2008).

*Maxwell v. Maxwell*, 382 S.W.3d 892, 895 (Ky. App. 2012).

## ANALYSIS

At the outset we must address failure to comply with the Kentucky Rules of Appellate Procedure (RAP).[1] RAP 32(E)(1)(a) requires that "[t]he appellant shall place the judgment, opinion, or order under review immediately after the appendix list so that it is most readily available to the court." Fitzpatrick failed to do so in the present case, failing to include an appendix of any sort to comply with the rule requiring a brief include an appendix. "An appellant and a cross-appellant must attach an appendix to the party's initial brief." *Id.* Calloway did so comply, despite having no materials to include in an appendix.

When confronted with failures to comply with the rules of briefing, this Court has several options. Under RAP 10(B), we may determine to issue:

 (1) A deficiency notice or order directing a party to take specific action,

(2) A show cause order,

---

[1] At the time of the filing of the Appellant's brief, the Kentucky Rules of Civil Procedure controlled the form and content of briefs filed in the appellate courts of the Commonwealth. Since the filing, the Kentucky Rules of Appellate Procedure ("RAP") have become effective. We will cite to the RAP, but each of the requirements cited were also required under the predecessor rules.

Or we may order:

(3) Striking of filings, briefs, record or portions thereof,

(4) Imposition of fines on counsel for failing to comply with these rules of not more than $1,000,

(5) A dismissal of the appeal or denial of the motion for discretionary review, and

(6) Such further remedies as are specified in any applicable rule.

*See also Hamburger v. Plemmons*, 654 S.W.3d 99, 102 (Ky. App. 2022).

We choose this time to ignore the failure to comply with the rules and determine this matter on the merits. However, counsel should not depend upon future grace and should endeavor to comport with the RAP in all future filings.

Turning now to the merits of the case, a trial court should determine whether to modify a custody order per KRS 403.340.

(3) . . . When determining if a change has occurred and whether a modification of custody is in the best interests of the child, the court shall consider the following:

(a) Whether the custodian agrees to the modification;

(b) Whether the child has been integrated into the family of the petitioner with consent of the custodian;

(c) The factors set forth in KRS 403.270(2) to determine the best interests of the child;

(d) Whether the child's present environment endangers seriously his physical, mental, moral, or emotional health;

-6-

(e) Whether the harm likely to be caused by a change of environment is outweighed by its advantages to him; and

(f) Whether the custodian has placed the child with a *de facto* custodian.

(4) In determining whether a child's present environment may endanger seriously his physical, mental, moral, or emotional health, the court shall consider all relevant factors, including, but not limited to:

(a) The interaction and interrelationship of the child with his parent or parents, his *de facto* custodian, his siblings, and any other person who may significantly affect the child's best interests;

(b) The mental and physical health of all individuals involved;

(c) Repeated or substantial failure, without good cause as specified in KRS 403.240, of either parent to observe visitation, child support, or other provisions of the decree which affect the child, except that modification of custody orders shall not be made solely on the basis of failure to comply with visitation or child support provisions, or on the basis of which parent is more likely to allow visitation or pay child support;

custody of a minor child in accord with KRS 403.270:

(2) The court shall determine custody in accordance with the best interests of the child and equal consideration shall be given to each parent and to any *de facto* custodian. Subject to KRS 403.315, there shall be a presumption, rebuttable by a preponderance of evidence, that joint custody and equally shared parenting time is in the best interest of the child. If a deviation from equal

parenting time is warranted, the court shall construct a parenting time schedule which maximizes the time each parent or *de facto* custodian has with the child and is consistent with ensuring the child's welfare. The court shall consider all relevant factors including:

(a) The wishes of the child's parent or parents, and any *de facto* custodian, as to his or her custody;

(b) The wishes of the child as to his or her custodian, with due consideration given to the influence a parent or *de facto* custodian may have over the child's wishes;

(c) The interaction and interrelationship of the child with his or her parent or parents, his or her siblings, and any other person who may significantly affect the child's best interests;

(d) The motivation of the adults participating in the custody proceeding;

(e) The child's adjustment and continuing proximity to his or her home, school, and community;

(f) The mental and physical health of all individuals involved;

(g) A finding by the court that domestic violence and abuse, as defined in KRS 403.720, has been committed by one (1) of the parties against a child of the parties or against another party. The court shall determine the extent to which the domestic violence and abuse has affected the child and the child's relationship to each party, with due consideration given to efforts made by a party toward the completion of any domestic violence treatment, counseling, or program;

(h) The extent to which the child has been cared for, nurtured, and supported by any *de facto* custodian;

(i) The intent of the parent or parents in placing the child with a *de facto* custodian;

(j) The circumstances under which the child was placed or allowed to remain in the custody of a *de facto* custodian, including whether the parent now seeking custody was previously prevented from doing so as a result of domestic violence as defined in KRS 403.720 and whether the child was placed with a *de facto* custodian to allow the parent now seeking custody to seek employment, work, or attend school; and

(k) The likelihood a party will allow the child frequent, meaningful, and continuing contact with the other parent or *de facto* custodian, except that the court shall not consider this likelihood if there is a finding that the other parent or *de facto* custodian engaged in domestic violence and abuse, as defined in KRS 403.720, against the party or a child and that a continuing relationship with the other parent will endanger the health or safety of either that party or the child.

Fitzpatrick characterizes the factual findings of the trial court as being manifestly against the weight of the evidence but acknowledges that there was evidence adduced at the hearing to support the findings. The fact that the trial court found the weight of the evidence supportive of keeping the child in the custody of her grandmother, rather than changing custody as requested, does not equate with the findings of the court being deemed clearly erroneous.

There was evidence both biological parents had past substance abuse issues, despite the fact both appeared to be doing well at the time of the hearing. KRS 403.270(2)(f). There was evidence that Fitzpatrick's live-in girlfriend has previously expelled the child from his home, which brings into question the stability and safety of the home for a teenager. KRS 403.270(2)(c). Fitzpatrick lives in a different state, so if C.F. should again be expelled from her father's home, she would be in a different state without any family or school resources to access. KRS 403.270(2)(e). The mother had not seen C.F. or sought exercise of supervised visitation for a long period of time. KRS 403.270(2)(c); KRS 403.340(4)(c). It is true that C.F. expressed a desire to live half the time with her mother and half with her father. KRS 403.270(2)(b). C.F. had been in the custody of Calloway since she was a quite small child, due to the substance abuse of both parents. KRS 403.270(2)(h). Calloway wished to maintain custody of C.F. KRS 403.340(3)(a). There was no suggestion that C.F. was unsafe in the home of her grandmother, she was doing well in school and was involved in the school community. KRS 403.340(3)(d). Each of these facts was established in the record and cited by the trial court. We cannot say that the trial court erred in finding any of these facts.

As an appellate court, we defer to the conclusions of the trial court, which was in the unique position to evaluate the witnesses who appeared before it.

"Since the family court is in the best position to evaluate the testimony and to weigh the evidence, an appellate court should not substitute its own opinion for that of the family court." *B.C.*, 182 S.W.3d at 219. Here, the court stated that it did not believe that changing custody and placing the child in "this type of environment" was in the child's best interest. Such was not an abuse of discretion as there was evidence to support the conclusion.

The factual findings of the court support its conclusion that the best interests of the child would be best served by her remaining in the stable home maintained by her grandmother, where she has lived since she was a very small child. This does not prevent her father from continuing to enjoy visitation with her or prevent the mother from beginning to do so. The circuit court order denying the father's petition for custody is affirmed.

Fitzpatrick has argued that the trial court displayed a bias towards Calloway. We disagree. The circuit court was charged with determining what was in the best interests of the child. Simply because an adolescent wants to live in a home she perceives as less stringent, or is having problems with her custodians, does not establish that it is not in the child's best interest to remain in that home. Adolescence can be rife with strong emotions, the pushing of boundaries, or the questioning of rules. The fact that this grandmother and custodian sought mental

health counseling, rather than ignoring or hiding these issues, can certainly be indicative of having the best interests of the child in mind.

## CONCLUSION

The decision of the Greenup Circuit Court was supported by the weight of the evidence and was not an abuse of discretion. The circuit court is affirmed.

DIXON, JUDGE, CONCURS.

TAYLOR, JUDGE, CONCURS IN PART, DISSENTS IN PART, AND FILES SEPARATE OPINION.

TAYLOR, JUDGE, CONCURRING IN PART AND DISSENTING IN PART: I concur with the majority opinion as concerns affirming the family court's ruling on Fitzpatrick's custody motion. However, I must respectfully dissent to the extent that the majority does not address the family court's improper delegation of scheduling child visitation to the discretion of Calloway.

In the family court's Order denying Fitzpatrick's custody motion, the court further made the following directive in regard to visitation with the child:

> Ms. Calloway has testified that she has no objection to
> [C.F.] visiting with her mother and father. Therefore, the
> Court will not put any restrictions upon that visitation
> and will allow Ms. Calloway to make those sound
> decisions.

December 20, 2021, Order at 5.

This delegation of authority to Calloway to determine Fitzpatrick's visitation is totally improper and in violation of KRS 403.320(1). That statute provides that a parent who is not granted custody of his child is entitled to reasonable visitation as may be ordered by the court, after a hearing to determine if the visitation would endanger the child. A family court may not restrict visitation rights until such a finding of endangerment is made. *Stewart v. Burton*, 108 S.W.3d 647, 650 (Ky. App. 2003). In this case, the family court has improperly delegated the court's duty to conduct a hearing and schedule Fitzpatrick's visitation with his child to Calloway, the child's grandmother. As such, the order is unlawful and an abuse of discretion.

While granted, this issue was not raised by Fitzpatrick in this appeal, this Court has the right to address or decide an issue not raised if the court confines its review to the record on appeal. *Priestley v. Priestley*, 949 S.W.2d 594, 596 (Ky. 1997) (citing *Mitchell v. Hadl*, 816 S.W.2d 183 (Ky. 1991)). There is no rule of court or constitutional provision that prevents this Court from deciding an issue not presented on appeal by the parties. *Mitchell*, 816 S.W.2d at 185.

In this case, the family court has clearly violated applicable law regarding Fitzpatrick's visitation rights which I find to be palpable. *See* Kentucky Rules of Civil Procedure 61.02. Given the importance of a parent's right to visitation with his child, I do not believe we can ignore this substantial and

-13-

substantive error in the family court's order. This case should be remanded to the family court with directions that Fitzpatrick's visitation be determined by the family court in accordance with KRS 403.320(1).

BRIEF FOR APPELLANT:

Natasha L. Kinnan
Catlettsburg, Kentucky

BRIEF FOR APPELLEE JEANETTE CALLOWAY:

Jeffrey D. Hensley
Russell, Kentucky